# Helen Askey et al., Appellants, v Occidental Chemical Corporation et al., Respondents.

Fourth Department, May 25, 1984

APPEARANCES OF COUNSEL

*Sugarman, Denworth & Hellegers* (*Robert J. Sugarman, John F. Hellegers* and *Robin T. Locke* of counsel), and *Lewis Steele* and *Allan Kanner* for appellants.

*Phillips, Lytle, Hitchcock, Blaine & Huber* (*David Floyd* of counsel), for respondents.

### OPINION OF THE COURT

SCHNEPP, J.

This action for damages and injunctive and other equitable relief was commenced by eight plaintiffs on their own behalf and on behalf of a purported class of persons and entities for personal injuries and property damage caused by the alleged discharge of toxic substances from defendants' Hyde Park landfill in the Town of Niagara, New York. They appeal from an order of Special Term which denied their prediscovery motion to maintain the action as a class action and struck from the complaint the allegations relating to the class for which certification was sought. The novel issue presented is whether those persons who have an increased risk of cancer, genetic damage and other illnesses by reason of their exposure to the toxic chemicals emanating from the landfill, but whose physical injuries are not evident, should be certified as a class for the purpose of determining their right to recover the costs of future medical monitoring services to diagnose warning signs of the development of disease.

The Hyde Park landfill is the successor chemical and waste disposal site to defendants' Love Canal site. It is roughly triangular in shape, occupying approximately 15 acres in an industrial complex in the extreme northwest corner of the Town of Niagara. The defendants concede that between 1953 and 1974 an estimated 80,000 tons of 25 different chemical residues were deposited there. Plaintiffs allege that these residues have seeped into the ground and migrated from the site via a drainage channel known as the "Bloody Run Creek" which flows north from the landfill, as well as through air dispersion of particulate matter, thus exposing area residents to cancer-causing agents.

The landfill has been the subject of much litigation brought not only by area residents but by public bodies as

well. An action instituted in 1978 by the Town of Niagara against defendants was subsequently discontinued. In 1979, 15 property owners in the area filed a notice of claim against various local governments for personal injuries allegedly caused by exposure to the landfill's toxic chemicals. A suit brought in Federal District Court by the United States Environmental Protection Agency against defendants was settled in 1982 (*United States v Hooker Chems. & Plastics Corp.*, 540 F Supp 1067). While the settlement agreement established a comprehensive environmental testing, remedial and monitoring program, it did not absolve defendants from liability in actions brought by private individuals who were not parties to the settlement. Presently, there are in addition to the instant action 23 other actions pending in New York Supreme Court, Niagara County, against defendants, the County of Niagara and the Towns of Niagara and Lewiston on behalf of 43 plaintiffs who seek $22,700,000 for personal injuries and $675,000 for property damages. These plaintiffs are alleging a broad range of more than 70 different illnesses and maladies attributable to their alleged exposure to the toxic chemicals.

The named plaintiffs in the present action are persons who live or have lived near the site. Helen and Blair Askey have owned and resided at a home located less than one-quarter mile from the landfill and 75 yards from Bloody Run Creek since 1953. Stanley Nogash, who is now deceased, owned and resided at a home located less than one-quarter mile from the landfill and near Bloody Run Creek from 1918 until 1983. Leo and Grace Machelor have owned and resided at a home located less than one-quarter mile from the landfill and 300 yards from Bloody Run Creek since 1925. John and Elaine Machelor resided during 1942-1968 and 1957-1968, respectively, at homes whose yards abut Bloody Run Creek and are within one-quarter mile from the landfill. Connlith Keogh has lived within one-quarter mile from the landfill and 100 yards of the Bloody Run Creek since 1958.

These plaintiffs allege injuries which may be characterized as either manifest or latent. In the former category, they seek recovery for allegedly known physical injuries

said to have been caused by exposure to the toxins emanating from the landfill since 1953. The latter is concerned with injuries which have not surfaced but which may afflict them in the future. They allege that their exposure has increased their risk of developing cancer and other chemically induced diseases, and in their complaint seek as a remedy the imposition of a constructive trust upon the property owned by defendants in an amount sufficient to pay for the cost of medical detection services made necessary by the increased hazards, reserving the right to seek damages for such enhanced risks.

The proposed class is defined by its "mass exposure to [defendants' alleged] environmental offenses" and consists of all who have been exposed to the toxic wastes dumped at the site. Plaintiffs estimate that there are at least 2,855 persons residing at the present time in the nine-square-mile area impacted or affected by the landfill. This number was determined through use of a map of the geographical pattern of dust deposition from the landfill prepared in 1982 by the New York State Department of Conservation in conjunction with the Department of Health. Dr. Irwin D. J. Bross, Director of Biostatistics at Roswell Park Memorial Institute, Buffalo, New York, alleges in an affidavit that persons exposed to toxic chemicals run the risk of suffering "invisible genetic damage which can lead to a variety of adverse health effects at future times, possibly 20 years later." He states that they may suffer a "minute biochemical lesion * * * in the complex double-helix of human DNA in the nucleus of a cell * * * [starting] a long and involved biological process that leads to cancer or other health effects." "The identifiable class of persons here [who have suffered this genetic damage]", states Dr. Bross, "are those who because of proximity to the Bloody Run or Hyde Park landfills would have an increased risk of exposure to toxic chemicals and consequently an increased risk of invisible genetic damage." He acknowledges, however, that although "[i]n a general sense the identification of the class of persons is geographic * * * distance is not the only factor, since the kinds of toxic [sic] and routes of dispersion are also important (though not fully known)". Furthermore, he finds it "hard to say with precision" how

many people are likely to be in the class and states that "at this time the individuals in the class at risk who have sustained the genetic damage are not identifiable". Dr. Bross proposes that any remedy "should provide that when the invisible genetic damage becomes visible, the persons involved in the class action should have immediate, free access to such medical care as they wish to have", and that "there should be 'surveillance' of the population at risk in the public health sense of this word" so that care may be provided "at an early enough stage [to] minimize the impact of the disease".

Defendants adduced no medical proof of their own, but argued that Dr. Bross' proposed definition of the class is unsatisfactory because of his inability, at least at this stage of the litigation, to identify the at-risk population with any degree of certainty. They claimed that class treatment is not only inappropriate but impossible, since liability and damage cannot be established without extensive and individualized proof to establish a nexus between the exposure to the toxic wastes and any alleged injury. As far as the claim for medical monitoring is concerned, defendants argued that this, too, is subject to individualized proof, since plaintiffs must show that their exposure occurred under circumstances which render defendants liable for any damage suffered, and that the exposure was of such a nature and duration that, when considered in light of the genetic and medical history of each claimant and other relevant factors relating to the claimant's work and life-style, medical surveillance is reasonably required.

Special Term addressed itself to the proposed certification of two classes: one to encompass claims for "allegedly known injuries", and the other for claims for "potential injuries which unknown individuals may be afflicted with in the future". As to the former, Special Term found that the class is not so large as to make joinder impracticable, that common questions of law and fact do not predominate over individual ones, that the claims are not typical of all segments of the purported class and that the plaintiffs in the other pending actions have an apparent interest in pursuing their own strategies and tactics. We find no error in this decision and affirm that part of the order for the

reasons stated by Special Term in its memorandum decision.

█ Our concern is with Special Term's denial of class status to those for whom it is alleged that the need for medical monitoring exists. With regard to this proposed class, Special Term found that the "application is grounded more on emotion than on permissive law" and explained that "[i]t is not within the powers of the Supreme Court under the law as structured to create * * * a medical monitoring fund" and that no "authority [has] been submitted by the class plaintiffs to support [the] proposition that New York Law recognizes a claim for 'increased risk' without the showing of an actual injury as a compensable item of damage". For the reasons which follow, we believe that Special Term reached the correct decision but not for the right reasons.

█ Although damages resulting from the enhanced risk of cancer and the threat of future harm not yet realized are not compensable in a tort action (see Prosser, Torts [4th ed], § 30; see, also, *Ayers v Township of Jackson,* 189 NJ Super 561, 566-568), there is a basis in law to sustain a claim for medical monitoring as an element of consequential damage, and its roots lie in the 1936 Court of Appeals decision in *Schmidt v Merchants Desp. Transp. Co.* (270 NY 287). In that case, a plaintiff sued his former employer more than three years after the termination of employment to recover for a lung disease caused by the inhalation of dust negligently allowed to accumulate in the air. The decision is the source of the rule, reaffirmed many times since, that the applicable three-year period of limitations in cases such as this begins to run from the date of the last exposure to the foreign substance and not from the date on which the disease caused by that substance was or could have been discovered* (see *Matter of Steinhardt v Johns-Manville Corp.,* 54 NY2d 1008; *Thornton v Roosevelt Hosp.,* 47 NY2d 780; *Schwartz v Heyden Newport Chem. Corp.,* 12 NY2d 212, cert den 374 US 808). The Court of Appeals said in *Schmidt v Merchants Desp. Transp. Co.* (270 NY 287, 301, *supra*) that a cause of action accrues when the forces

---

* The reasonableness and fairness of this rule have been questioned repeatedly. So far, any remedial action has been limited by the Legislature to Agent Orange cases (CPLR 214-b).

wrongfully put in motion produce injury by the wrongful invasion of personal or property rights, and that the "injury to the plaintiff [in that case] was complete when the alleged negligence of the defendant caused the plaintiff to inhale the deleterious dust."

In deciding the Statute of Limitations issue, the Court of Appeals in *Schmidt* (*supra*) grappled with the problem which confronts us here, i.e., whether plaintiffs have a claim for injuries not yet present, or as Special Term phrased it, whether plaintiffs have a claim for "potential injuries which they may be afflicted with in the future". The apparent answer given by the Court of Appeals is "Yes", provided that the proper medical proof is adduced.

In *Schmidt* (*supra,* p 301), the Court of Appeals recognized that a plaintiff has a cause of action immediately upon exposure to a foreign substance and can recover all damages which he can show resulted or "would result therefrom", even though at the time the action is commenced no serious damage to the plaintiff has developed. The theory of liability grows out of the invasion of the body by the foreign substance, with the assumption being that the substance acts immediately upon the body setting in motion the forces which eventually result in disease (see *Schwartz v Heyden Newport Chem. Corp.,* 12 NY2d 212, 216-217, *supra*). The defendant is liable for "reasonably anticipated" consequential damages which may flow later from that invasion although the invasion itself is "an injury too slight to be noticed at the time it is inflicted." (*Schmidt v Merchants Desp. Transp. Co., supra,* pp 300, 301.)

The proof problems are, of course, formidable. In order to recover for apprehended consequences not presently manifest, there must be such a degree of probability of their occurrence as to amount to a reasonable certainty that they will result (*Strohm v New York, Lake Erie & Western R. R. Co.,* 96 NY 305, 306; see *Matott v Ward,* 48 NY2d 455, 461; *Cross v City of Syracuse,* 200 NY 393, 397; see, also, *Cohen v Lizza,* 63 AD2d 557). Damages for the prospective consequences of a tortious injury are recoverable only if the prospective consequences may with reasonable probability be expected to flow from the past harm. Consequences

which are contingent, speculative, or merely possible are not properly considered in ascertaining damages (*Strohm v New York, Lake Erie & Western R. R. Co., supra,* p 306). If a plaintiff seeks future medical expenses as an element of consequential damage, he must establish with a degree of reasonable medical certainty through expert testimony that such expenses will be incurred (see *Beyer v Murray,* 33 AD2d 246).

In light of the foregoing, it would appear that under the proof offered here persons exposed to toxic chemicals emanating from the landfill have an increased risk of invisible genetic damage and a present cause of action for their injury, and may recover all "reasonably anticipated" consequential damages. The future expense of medical monitoring could be a recoverable consequential damage provided that plaintiffs can establish with a reasonable degree of medical certainty that such expenditures are "reasonably anticipated" to be incurred by reason of their exposure. There is no doubt that such a remedy would permit the early detection and treatment of maladies and that as a matter of public policy the tort-feasor should bear its cost.

The fact that the future expense of medical monitoring may be recovered as an element of consequential damages, however, does not mean that in cases such as the one at hand class certification should necessarily be allowed. We recognize that CPLR article 9 provides a flexible, functional scheme for certification of class actions and that it was enacted "to liberalize the narrow class action legislation which preceded it" and "to overcome aspects of the prior law which prevented the use of the class action device in cases involving 'mass exposure to environmental offenses'" (*Evans v City of Johnstown,* 97 AD2d 1, 2). There are, however, five prerequisites under CPLR 901 which must be satisfied, as well as at least five factors under CPLR 902 which must be considered, before an action may be certified as a class action. Class action certification is a question vested in the sound discretion of the court (*Matter of Froehlich v Toia,* 71 AD2d 824; see Siegel, NY Prac, §§ 141, 142), and the plaintiffs bear the burden of establishing compliance with the prerequisites of CPLR 901 and 902 (2 Weinstein-Korn-Miller, NY Civ

Prac, par 902.04). They must show factually that the purported class exists (see *Scott v Prudential Ins. Co.*, 80 AD2d 746, 747, mot to dismiss app granted 54 NY2d 753; *Reiken v Nationwide Leisure Corp.*, 75 AD2d 551, 553) and can be described with certainty (*Wojciechowski v Republic Steel Corp.*, 67 AD2d 830, mot for lv to app dsmd 47 NY2d 706). A motion for class certification which is predicated on general, conclusory allegations should be denied (*Dupack v Nationwide Leisure Corp.*, 70 AD2d 568, 569).

Here, neither the map showing the geographical area impacted or affected by the Hyde Park landfill, nor the affidavit of Dr. Bross provide the needed factual basis for identifying a genuine class. The map is relevant to indicate those persons who may have been exposed to airborne particulates emanating from the landfill. However, it does not identify with any degree of specificity those persons within that area whose bodies have been invaded by a toxic substance and who as a result need medical monitoring. Dr. Bross concedes that at this time it "is hard to say with precision" who are members of the proposed class and that identification of the class is dependent not only on geographic considerations but also on other factors such as "the kinds of toxic [*sic*] and routes of dispersion", which he acknowledges are "not fully known" at the present time.

Not everyone who has lived in the designated area since 1954 when the chemicals were first disposed of in the landfill and who believes or claims that he has been exposed to toxic chemicals is entitled to future medical expenses. The only fact truly common to the proposed class, as established by the record, is that all of its members live or have lived in an area adjacent to the landfill at some time during the last 30 years. There is no proof whatever of the nature and extent of the contamination which resulted from the various chemicals deposited over the years at the landfill. Consequently, there is no way to determine as a threshold matter the identity of those persons who may need medical monitoring. Thus, plaintiffs have not satisfied their burden of showing the existence of a genuine class and we conclude that certification of a class encompassing persons requiring medical monitoring was prop-

erly denied (see *Scott v Prudential Ins. Co.*, 80 AD2d 746, *supra*).

Accordingly, Special Term's order denying class action certification should be affirmed.

CALLAHAN, J. P., DENMAN, BOOMER and O'DONNELL, JJ., concur.

Order unanimously affirmed, without costs.