Harry F. GIBBS, Sr.; Robert Bailey, Sr.; Anthony D'Orazio, Jr.; and William E. Mooney, on behalf of themselves and a class of all persons similarly situated, Plaintiffs,

v.

E.I. DuPONT DE NEMOURS & CO., INC.; Allied–Signal Inc., successor-in-interest to the Allied Chemical Corp.; First Mississippi Corporation; First Chemical Corporation; American Cyanamid Company; and USX Corporation, successor-in-interest to United States Steel Corporation, Defendants.

No. 93–CV–497C.

United States District Court, W.D. New York.

Feb. 6, 1995.

Steven H. Wodka, Little Silver, NJ, and John Ned Lipsitz, Buffalo, NY, for plaintiffs.

Phillips, Lytle, Hitchcock, Blaine & Huber (Paul F. Jones, of counsel), Buffalo, NY, for defendants I.E. DuPont De Nemours & Co., Inc., and Allied–Signal Inc.

Gibson, McAskill & Crosby (David W. Kloss, of counsel), Buffalo, NY, for defendants First Mississippi Corp., First Chemical Corp., and American Cyanamid Co.

Jaeckle, Fleischmann & Mugel (Howard S. Rosenhoch, of counsel), Buffalo, NY, for defendant USX Corp.

## DECISION and ORDER

CURTIN, District Judge.

### *BACKGROUND*

This is one of a series of cases involving the high incidence of bladder cancer among employees of the Goodyear Tire & Rubber Company in Niagara Falls, New York. In this action, plaintiffs Harry Gibbs, Robert Bailey, Anthony D'Orazio, and William Mooney, all former employees of Goodyear, sue defendants DuPont, Allied–Signal, First Mississippi, First Chemical, Cyanamid and USX in negligence and strict product liability. Plaintiffs claim that the defendants manufactured and sold orthotoluidine and/or anilide to Goodyear without providing adequate warning of the health hazards of these products. Plaintiffs further claim that these chemical compounds were defective and unreasonably dangerous when used in a foreseeable manner and that exposure to these substances subjected them to a significant excess risk of developing bladder cancer.

Plaintiffs move to certify a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure of all retired and former Goodyear employees at the Niagara Falls plant who were assigned to work in Department 245 or

had job duties which exposed them to the substances orthotoluidine and aniline during the period of January 1, 1957, through June 11, 1990, and who have not been diagnosed with bladder cancer. None of the named plaintiffs claim to have any present physical injury. Rather, they rely on a study conducted by the National Institute for Occupational Safety and Heath ("NIOSH"), which found that the Goodyear workers at the Niagara Falls plant have an excess risk of developing bladder cancer ranging from 3.6 to 27.2 times the normal risk. Because of the long latency period, NIOSH recommended an ongoing medical monitoring program designed to detect bladder cancer at its earliest stage.[1] Thus, plaintiffs seek injunctive relief in the form of a court-administered fund paid for by defendants which would cover the reasonably anticipated costs of a medical monitoring program for bladder cancer for the lifetime of the class members.

Defendants move to dismiss the complaint on several grounds. They assert that plaintiffs' claim is moot because Goodyear already provides a medical monitoring program and the plaintiffs' union, the Oil, Chemical, and Atomic Workers, provides bladder cancer screening. They argue that plaintiffs have failed to state a claim because New York State law does not recognize a cause of action for medical monitoring damages. They contend that the court has no subject matter jurisdiction because plaintiffs' individual claims do not exceed $50,000, the statutory minimum amount in controversy for diversity jurisdiction. Finally, defendants oppose the motion for class certification on the grounds that: 1) plaintiffs failed to conform to Local Rule 15, thereby waiving their class allegations; 2) plaintiffs' pleadings do not satisfy the threshold requirements of Rule 23(a); and 3) class certification for injunctive relief is inappropriate for a medical monitoring claim.

## DISCUSSION

### I. Mootness

■■■ Federal courts must determine whether there is a live controversy before

assuming jurisdiction. *Mathis v. Bess,* 692 F.Supp. 248, 257 (S.D.N.Y.1988). Defendants argue that plaintiffs' claims are moot because Goodyear has a medical monitoring program that screens current and former employees for bladder cancer which is comprehensive and uses all medically appropriate tests and technology. *See* Item 30, Exhibit N (Hense Aff.).

Plaintiffs reply that the screening program is inadequate because: (1) it is not available to former employees who are not retirees; (2) certain necessary tests are not offered to those who reside outside Western New York; (3) the program is only experimental; (4) participants may not enter the program until their birth month, (5) follow-up procedures are below the expected standard of care, (6) it fails to provide for technological advances, outreach, education, and data analysis and dissemination, and (7) the Goodyear health insurance plan for retirees, providing a collateral source for follow-up tests, gives no relief for other former employees. Item 31 at 13–14, Ex. E (Aliotta Aff.). In a supplemental memorandum, the plaintiffs further contend that even if the current program was adequate, defendants have failed to show that the plaintiffs have any legal entitlement to its continuation. Item 38.

The issue of whether the medical monitoring currently available to named plaintiffs and those in the proposed class is adequate is necessarily one of fact. Both parties have submitted expert affidavits concerning the types of procedures which are necessary to insure early detection of bladder cancer. Plaintiffs have provided a sufficient critique of the current Goodyear program to show that a factual dispute exists regarding its adequacy. Therefore, summary judgment on mootness is inappropriate at this stage.

### II. Medical Monitoring

■■■ Defendants contend that plaintiffs' complaint fails to state a claim because the New York Court of Appeals has not and, if presented with the issue, would not recognize a cause of action for medical monitoring.

1. E. Ward et al., *"Excess Number of Bladder Cancers in Workers Exposed to Ortho–Toluidine* and Aniline 83," Journal of the National Cancer Institute 501 (1991); Item 29, tabs 1–3.

State law announced by the highest court in the forum state is controlling in federal court in a diversity case. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where there is no decision by the highest court, "then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the state." *Commissioner v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). The New York Court of Appeals has not yet recognized a cause of action for medical monitoring. Defendants cite several examples of Court of Appeals decisions which express hesitancy at the judicial creation or expansion of tort liability in such fields as psychic injury, DES, fetal rights, and asbestos. Item 21 at 28–32. They argue that this caution by New York's highest court would carry over to medical monitoring. Defendants urge this court not to create such an expansion in the absence of any clear direction from the state judiciary.

Plaintiffs claim to the contrary that New York was one of the first states to recognize that the future expenses of medical monitoring could be a recoverable consequential damage from exposure to toxic chemicals if the plaintiffs could prove an increased risk of future harm by reason of their exposure and a reasonable anticipation that the expenditures for medical monitoring would be incurred as a result. *Askey v. Occidental,* 102 A.D.2d 130, 477 N.Y.S.2d 242, 247 (4th Dept. 1984). Plaintiffs cite several earlier cases to show that *Askey* is consistent with well-settled New York law. See Item 31 at 29–30.

Defendants counter that the discussion plaintiffs rely on in *Askey* was dictum and unworkable as a standard because it is unclear whether a showing of present injury or the probability of future injury is necessary for recovery. Item 21 at 33–37. No appellate court in New York State to date has held that a cause of action exists for medical monitoring. Indeed, defendants cite several recent asbestos cases in which appellate division courts affirmed summary judgment orders dismissing tort actions where there was no physical manifestation of contamination nor even allegations of "actual exposure to asbestos, at toxic levels, sufficient to state a cause of action upon which relief can be based." *Jones v. Utilities Painting Corp.,* 198 A.D.2d 268, 603 N.Y.S.2d 546 (2d Dept. 1993) (citing cases). Defendants argue that these cases show that New York courts follow a "proof of physical injury" standard as the predicate for liability on a medical monitoring claim. Item 21 at 38–40.

In response, plaintiffs refer to a four-part test developed by the United States Courts of Appeals for the Third Circuit to determine whether a cause of action for medical monitoring has been established:

1. Plaintiff was significantly exposed to a proven hazardous substance through the negligent actions of the defendant.

2. As a proximate result of exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease.

3. That increased risk makes periodic diagnostic medical examinations reasonably necessary.

4. Monitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial.

*In re Paoli,* 916 F.2d 829, 852 (3d Cir.1990), *cert. denied,* 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991).[2]

Plaintiffs persuasively distinguish the case law cited by the defendants using the *Paoli* test, which incorporated the *Askey* dictum.

---

2. At oral argument, plaintiffs' counsel informed the court that the Third Circuit recently reaffirmed the *Paoli* test. *In re Paoli Railroad Yard PCB Litigation ("Paoli II"),* 35 F.3d 717 (3d Cir. 1994). On remand from *Paoli I,* the district court again granted summary judgment in favor of the defendants, and plaintiffs appealed. The Court of Appeals in *Paoli II* reaffirmed the *Paoli I* test, explaining that:

> We stated that, "the appropriate inquiry is not whether it is reasonably probable that plaintiffs will suffer harm in the future but rather whether medical monitoring is, to a reasonable degree of medical certainty, necessary in order to diagnose properly the warning signs of disease." ... But we cautioned that a jury must "be able reasonably to determine that medical monitoring is probably, not just possibly necessary."

35 F.3d at 787, *quoting Paoli I,* 916 F.2d at 851.

*See* Item 31 at 31–33. Although the New York courts have not conclusively ruled on the availability of a claim for medical monitoring in the absence of present injury, I believe that *Askey* accurately represents a growing national acceptance of a such a claim (*see, e.g., Day v. NLO, Inc.*, 144 F.R.D. 330 (S.D.Ohio 1992), *petition for mandamus denied sub nom. In re NLO*, 5 F.3d 154 (6th Cir.1993); *Cook v. Rockwell Int'l Corp.*, 778 F.Supp. 512, 515 (D.Col.1991)), and would be embraced by the New York Court of Appeals. Thus, the medical monitoring claim shall stand.

## III. Amount in Controversy

■ Defendants also move to dismiss for lack of subject matter jurisdiction, arguing that the plaintiffs cannot individually satisfy the $50,000 amount in controversy required for diversity jurisdiction under 28 U.S.C. § 1332(a), nor may they aggregate their claims to meet the jurisdictional amount. If plaintiffs were merely seeking monetary damages, which they could do as well on an individual basis, they could not aggregate their claims in order to gain federal jurisdiction (*Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)) even in a Rule 23(b)(3) class action suit. *Zahn v. International Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973). However, for the reasons discussed below, I find that the plaintiffs in this case seek injunctive relief in the form of a common, court-supervised fund which would provide medical monitoring. In a suit for injunctive or declaratory relief, the amount in controversy is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 346–47, 97 S.Ct. 2434, 2443–44, 53 L.Ed.2d 383 (1977). The value of the medical monitoring program sought by plaintiffs is well in excess of $50,000, even using defendants' figures. Item 31 at 19. Therefore, the jurisdictional amount in controversy need not be met by the individual plaintiffs.

## IV. Class Certification

### A. Waiver of Class Allegations

■ Defendants first contend that the plaintiffs have waived their class allegations by failing to file a motion for certification within 120 days after filing their complaint on June 10, 1993, in violation of the Western District of New York Local Rule 15((d) (September 1, 1993). Rule 15(g) states that:

> Failure to move for class determination and certification within the time required herein shall constitute and signify an intentional abandonment and waiver of all class action allegations contained in the pleading.... If any motion for class determination or certification is filed after the deadline provided herein, it shall not have the effect of reinstating the class allegations unless and until it is acted upon favorably by the Court upon a finding of excusable neglect and good cause.

Plaintiffs maintain that the amendments to the Local Rules were intended to apply only to cases commenced on or after September 1, 1993. The introduction to *Civil Justice Expense and Delay Reduction Plan of the United States District Court for the Western District of New York* states that the Plan "will be implemented by way of amendments to the Court's Local Rules. The provisions of the Plan will become effective September 1, 1993, *and will apply to all civil matters commenced on or after that date.*" (Emphasis added). The Plan specifically describes the changes to Local Rule 15, including the references to the 120–day time limit in 15(d) and the waiver provision at 15(g).

Defendants counter that the order adopting the Local Rules controls the scope of cases affected by the Rules, and that if the Rules were intended to apply only to cases commenced on or after September 1, the Rules themselves would have so stated. Item 21 at 68. However, they offer no evidence to support this interpretation and I find it unworkable. According to the reasoning of the defendants, the plaintiffs whose complaints were filed more than 120 days prior to the Rules' effective starting date would be immediately foreclosed from moving for class certification. Alternatively, the defendants suggest that the 120 day limit run from September 1, 1993, but they have not pointed to any language which would support

this position. Thus, plaintiffs' motion for class certification will not be deemed waived.

### B. Appropriateness of Relief

Plaintiffs move for class certification under Fed.R.Civ.P. 23(b)(2). Such a class action may be maintained where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2) (1991 Rev.).

Defendants' assertion that they have not refused to act to set up a monitoring fund is premised on their argument that they have no contractual or legal obligation to act. Defendants argue that Rule 23(b)(2) actions are designed to prevent conduct. The discussion of a claim for medical monitoring under New York law in Part II of this decision demonstrated that this court believes such an obligation does exist.

■ More fundamentally, defendants attack the allegedly injunctive nature of the relief sought in the context of a Rule 23(b)(2) class determination. They argue that the nature of a medical monitoring claim and the proof that it entails render it inappropriate for litigation on a class-wide basis. Class certification was denied in *Askey* because the class members could not be ascertained. The *Askey* court expressed doubt that such a class action could stand, as medical monitoring claims are:

> subject to individualized proof, since plaintiffs must show that their exposure occurred under circumstances which render defendants liable for any damage suffered, and that the exposure was of such a nature and duration that, when considered in light of the genetic and medical history of each claimant and other relevant factors relat-

ing to the claimant's work and lifestyle, medical surveillance is reasonably required.

477 N.Y.S.2d at 246.

Defendant also cites decisions in mass tort actions involving Agent Orange, asbestos, and the Three Mile Island disaster in which class certification was narrowly defined or repudiated. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988); *In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir.1990); *In re Three Mile Island Litigation*, 87 F.R.D. 433 (M.D.Pa.1980).[3] For example, in *In re Agent Orange*, the Second Circuit found that the class certified by the district court was unworkable because:

> The relevant question, therefore, is not whether Agent Orange has the capacity to cause harm, the generic causation issue, but whether it *did* cause harm and to whom. That determination is highly individualistic, and depends upon the characteristics of individual plaintiffs (*e.g.*, state of health, lifestyle) and the nature of their exposure to Agent Orange. Although generic causation and individual circumstances concerning each plaintiff and his or her exposure to Agent Orange thus appear to be inextricably intertwined [at the time the class was certified by the district court], the class action would have allowed generic causation to be determined without regard to those characteristics and the individual's exposure.

818 F.2d at 165. Defendants maintain that this caution in certifying classes protects potential members of a proposed class as well as defendants. Under Rule 23(b)(2), class members may not opt out of their class. Therefore, a verdict that exposure to the chemicals at issue does not cause bladder

---

**3.** Defendants also cite *Werlein v. United States*, 746 F.Supp. 887, 912 (D.Minn.1990), *vacated* 793 F.Supp. 898 (1992), in which class certification was denied because "[t]o recover medical monitoring damages, a plaintiff will have to prove that he or she is at an increased risk of future harm.... Such proof is not workable in a class action format."

Since *Werlein* has been vacated, it is no longer good law. Moreover, the conclusion in *Werlein*

followed a discussion of plaintiffs' ability to recover the cost of future medical monitoring as tort damages under that state's common law. Such recovery was possible only if "a given plaintiff can prove that he has *present* injuries that increases his risk of future harm...." 746 F.Supp. at 904 (emphasis added). The elements of proof in *Werlein* are thus more individualized than in this case, where no present injury must be proven.

cancer would most likely preclude a class member who later contracted cancer from presenting proof of causality. Item 34 at 12–13.

Secondly, defendants claim that certification under Rule 23(b)(2) is inappropriate because that subsection was not intended to be used when money damages is the primary relief requested. When " 'the realities of the litigation' demonstrate that the suit has been brought primarily for money damages, it may not be maintained as a (b)(2) class action." *Christiana Mortg. Corp. v. Delaware Mortg. Bankers Ass'n,* 136 F.R.D. 372, 381 (D.Del.1991) *quoting In re School Asbestos Litigation,* 789 F.2d 996, 1008 (3d Cir.), *cert. denied sub nom., Celotex Corp. v. School Dist. of Lancaster,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). Defendants urge the court not to view the relief sought by plaintiffs as injunctive merely because the plaintiffs wish the money damages to be put into a common, court-administered fund. *See Hurt v. Philadelphia Housing Authority,* 151 F.R.D. 555 (E.D.Pa.1993) (class certification denied for plaintiffs seeking monitoring expenses and an educational program for exposure to lead paint).

Plaintiffs respond that where medical monitoring claimants have sought integrated relief, courts have concluded that certification under Rule 23(b)(2) is appropriate. In two recent cases, plaintiff-classes seeking medical monitoring programs for workers exposed to radioactive substances at nuclear weapons facilities were certified. *Day v. NLO,* 144 F.R.D. 330 (S.D.Ohio 1992); *Cook v. Rockwell,* 151 F.R.D. 378, 388 (D.Colo.1993). *See also Yslava v. Hughes Aircraft Co.,* 845 F.Supp. 705 (D.Ariz.1993) (plaintiff-class exposed to contaminated drinking water).

Plaintiffs insist that defendants are misrepresenting the relief they seek as predominantly money damages. In *Barth v. Firestone Tire & Rubber Co.,* 661 F.Supp. 193 (N.D.Cal.1987), the plaintiff sought class-based equitable relief in the form of a medical monitoring fund which would gather and disseminate information relating to the diagnosis and treatment of diseases resulting from exposure to benzene and other toxic heavy metals. In a motion to dismiss the complaint, the defendant argued that injunctive relief was inappropriate since money damages could be paid. The court found that no adequate remedy at law existed "that would permit a court to fashion an underlying remedy such as the medical monitoring sought" (661 F.Supp. at 205) and refused to strike the request. Similarly here, plaintiffs urge the court to regard the court-supervised fund they seek as injunctive relief proper for a Rule 23(b)(2).

Upon review of the authority cited by both parties, those supporting plaintiffs' arguments appear to be the most relevant. Plaintiffs refer the court to cases in which the relief sought was primarily in the form of court-administered funds. The responsibilities of the funds extended beyond individual monitoring to data compilation and analysis and other pooling of resources which might aid in the early detection of the disease. Conversely, in the cases cited by the defendants, the plaintiff-class sought injunctive relief incidental to monetary damages, or merely wanted the costs of future medical costs without a common fund.

Although none of the cases cited by either party are controlling here, the weight of the persuasive authority favors the plaintiffs. A court-administered fund which goes beyond payment of the costs of monitoring an individual plaintiff's health to establish pooled resources for the early detection and advances in treatment of the disease is injunctive in nature rather than "predominantly money damages" and therefore is properly certified under Rule 23(b)(2).

### C. Rule 23(a) Prerequisites

Finally, defendants contend that even if class certification is appropriate under Rule 23(b)(2), plaintiffs cannot meet the Rule 23(a) threshold requirements. Rule 23(a) requires plaintiffs seeking class certification to show that: 1) the class is so numerous that joinder of all members is impracticable ("numerosity"); 2) there are questions of law and fact common to the class ("commonality"); 3) the claims or defense of the representative parties are typical of the claims or defenses of the class ("typicality"); and 4) the representative parties will fairly and adequately

protect the interest of the class. Fed. R.Civ.P. Rule 23(a). In addition, the class must be defined so as to permit ascertainment of its membership. Defendants claim that plaintiffs fail to satisfy their burden in any of these particulars.

Plaintiffs' counsel maintained in the reply brief and again at oral argument that he has not yet had the opportunity to respond to the problems raised by the defendants under Rule 23(a). Given the number and complexity of arguments put forth by the defendants regarding the threshold requirements for a Rule 23(b)(2) certification, I believe that the plaintiffs must respond in more detail before any determination can be made.

Accordingly, plaintiffs shall file a supplemental brief responding to all the concerns raised by defendants regarding the four requirements. It may be necessary for the plaintiffs to file additional affidavits to explain the different job descriptions covered in the proposed class, how each type of job exposed workers to the chemicals in question, the years in which various members may have been exposed to the chemicals, how the length of time of exposure affects the class composition, the plaintiffs' financial ability to sustain representation, and other issues brought out in the defendants' memorandum. Finally, the plaintiffs should inform the court whether limited discovery is necessary to satisfy Rule 23(a). Defendants will given an opportunity to reply and include their suggestions for discovery or hearing on these issues.

## CONCLUSION

Defendants' motion to dismiss is denied in its entirety. Regarding the plaintiffs' motion for class certification, the court finds that the plaintiffs have not waived their class allegations and that a medical monitoring fund constitutes appropriate relief under 28 U.S.C. Rule 23(b)(2). However, the court will wait to certify the class until the parties have completed supplemental briefing and, if necessary, further discovery and hearing on the Rule 23(a) threshold issues. Plaintiffs shall submit its supplemental brief by April 10, 1995, and defendants shall respond by May 30, 1995.

So ordered.