OPINION OF THE COURT
Nathan L. Berke, J.
This is a cross motion by the plaintiffs for an order pursuant to CPLR 902 determining that the action may proceed as a class action. The cross motion is denied because the plaintiffs have failed to show that there are questions of law or fact common to the class which predominate over any questions affecting only individual members (CPLR 901 [a] [2]) and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy (CPLR 901 [a] [5]).
The plaintiffs are seeking to recover damages against the named cigarette manufacturers and related entities because lung or throat cancer was contracted due to the smoking of cigarettes.
The complaint asserts 13 causes of action. The first for failure to warn prior to 1969, the second for failure to warn after 1969, the third for fraud and deceit, the fourth for negligent misrepresentation, the fifth for negligent and defective design, the sixth for strict products liability, the seventh for breach of express warranty, the eighth for breach of the implied warranty of merchantability, the ninth for breach of the implied warranty of fitness for a particular purpose, the tenth for loss of consortium, the eleventh for wrongful death, the twelfth again for loss of consortium, and the thirteenth again for wrongful death.
Paragraph 7 of the complaint defines the proposed class as: “(a) all persons in the State of New York who have smoked *877 cigarettes manufactured by the defendant tobacco companies and have contracted lung and/or throat cancer as a result of having smoked said cigarettes [and] (b) the estates, representatives, administrators and spouses of all persons in the State of New York who have smoked cigarettes manufactured by the defendant tobacco companies [and who have] contracted lung and/or throat cancer as a result of having smoked said cigarettes [and who have] died from said cancer.” The term “throat cancer” includes laryngeal, pharyngeal, and tongue cancer. The plaintiffs’ attorney affirms “there will be approximately 65,000 class members for the years 1994 to 1998, and the number will grow by approximately 13,000 in each year subsequent.” (Finz affirmation, Mar. 22, 1999, at 5.) The estimate given here by the plaintiffs’ attorney does not include thousands of spouses who would sue for loss of consortium.
In an order dated July 24, 1997 a Justice of this court denied a motion by the defendants to dismiss the complaint for, inter alia, failure to state a cause of action and granted on an interim basis a cross motion by the plaintiffs for class certification. The defendants appealed. In an order dated July 6, 1998, the Appellate Division, Second Department, dismissed the second cause of action and partially dismissed the fourth, eighth and ninth causes of action. The Appellate Division also deleted that part of the lower court’s order which granted the plaintiffs’ cross motion for class certification and stated: “The record is insufficient to make an informed determination as to all of the prerequisites to certification of a class action. However, given, inter alia, the scope and complexity of the issues presented, we find it appropriate to remit the matter for limited discovery and/or a mini-hearing on the issue of class certification”. (Geiger v American Tobacco Co., 252 AD2d 474, 476.)
The cross motion was referred to this court. Limited discovery was granted and the parties agreed to submit affidavits instead of holding a mini-hearing. The defendants conducted depositions of the plaintiffs and also submitted, inter alia, affidavits from various experts and depositions from other trials. The plaintiffs did not conduct any depositions and instead chose to submit affidavits only.
Included in the affidavits submitted by both sides were affidavits of medical experts relating to the causes of lung and throat cancer. The plaintiffs submitted an affidavit from Nor-wood S. Wilner, an attorney and the lead counsel in the trial of four tobacco cases, who alleges that “the vast majority of the time on each trial was spent on generic issues which did not *878 differ trial to trial.” The plaintiffs also placed into the record an affidavit from the Honorable Milton Mollen, formerly the Presiding Justice of the Appellate Division, Second Department, who states that: “the court system is struggling to maintain its level of dispositions under the ever increasing burden of tort cases; that the class proposed in this case exceeds 50,000 members and that an influx of 50,000 or more additional complex tort cases, all essentially containing similar allegations, would completely overburden the courts and jury system.” He concludes that “the mechanism to avoid this predicament is to certify a class of individuals and convene one trial to dispose of as many issues common to all the claims as possible.”
This court heard oral argument on the cross motion, which was largely devoted to whether there were any particular issues in the case which could be given class action treatment pursuant to CPLR 906. Toward the end of oral argument, the plaintiffs’ attorneys offered to “withdraw” their fraud cause of action for the purposes of class action certification. The plaintiffs subsequently also withdrew from class action consideration causes of action for negligent misrepresentation and breach of express warranty. The plaintiffs purport to “simplify issues for trial” by withdrawing those causes of action where reliance is an element.
There are five criteria under CPLR 901 which must be met and at least five additional factors under CPLR 902 which must be given consideration before a class action may be certified. (See, CPLR 901, 902; Askey v Occidental Chem. Corp., 102 AD2d 130 [4th Dept 1984].)
“CPLR 902 provides that the court may permit a class action to be maintained only if it finds that all of the prerequisites under CPLR 901 have been satisfied”. (3 Weinstein-KornMiller, NY Civ Prac 902.06 [emphasis added].) The plaintiffs have the burden of showing that the criteria of CPLR 901 and 902 are met. (Ackerman v Price Waterhouse, 252 AD2d 179; Small v Lorillard Tobacco Co., 252 AD2d 1; Canavan v Chase Manhattan Bank, 234 AD2d 493; Askey v Occidental Chem. Corp., supra.) “A motion for class certification which is predicated on general, conclusory allegations should be denied”. (Askey v Occidental Chem. Corp., supra, at 138; Canavan v Chase Manhattan Bank, supra.)
“New York’s class action statute (CPLR 901-909) has much in common with Federal rule 23 * * * The prerequisites to the filing of a New York class action are virtually identical to those *879 contained in rule 23”. (Matter of Colt Indus. Shareholder Litig., 77 NY2d 185, 194.) State courts rely upon Federal case law applying Federal Rules of Evidence rule 23 in determining whether a class action may be certified under CPLR article 9. (See, e.g., Stern v Carter, 82 AD2d 321; Friar v Vanguard Holding Corp., 78 AD2d 83.)
Two Federal appellate courts applying rule 23 have unanimously denied class certification in tobacco cases similar to the one at bar. (See, Barnes v American Tobacco Co., 161 F3d 127 [3d Cir 1998]; Castano v American Tobacco Co., 84 F3d 734 [5th Cir 1996].) At least seven Federal District Courts have also denied class certification pursuant to rule 23 in similar tobacco cases. (See, Emig v American Tobacco Co., 184 FRD 379 [Kan 1998]; Insolia v Philip Morris, Inc., WD Wisc, Dec. 16, 1998, 97-C-0347; Ruiz v American Tobacco Co., 180 FRD 194 [PR 1998]; Walker v Liggett Group, 175 FRD 226 [W Va 1997]; Arch v American Tobacco Co., 175 FRD 469 [Penn 1997]; Smith v Brown & Williamson Tobacco Corp., 174 FRD 90 [Mo 1997]; Lyons v American Tobacco Co., 1997 WL 809677, 1997 US Dist LEXIS 18365 [SD Ala, Sept. 30, 1997, Hand, JJ.)
As far as State courts are concerned, the Appellate Division, First Department, in Small v Lorillard Tobacco Co. (252 AD2d 1, supra) held on October 27, 1998 that class certification was not warranted in a tobacco action case as a consumer fraud case. A Judge of the New Jersey Superior Court has also denied class action certification in a case similar to the one at bar. (See, Cosentino v Philip Morris, Inc., Oct. 22, 1998, No. MID-L-5135-97, reconsideration Feb. 11, 1999.)
The plaintiffs have cited the decisions of only two State courts which have permitted tobacco cases to proceed as a class action. In Broin v Philip Morris Cos. (641 So 2d 888 [Fla 1994]), the District Court of Appeal of Florida, Third District, certified a class of nonsmoking flight attendants who allegedly suffered injury caused by the inhalation of secondhand smoke in airplane cabins. The case is of limited precedential value because while the court applied a commonality test, the court gave little, if any, consideration to the predominance test. Moreover, the court gave no consideration to whether causation is an individual issue, and the court simply shrugged off individual Statute of Limitations and choice of law problems as “of no moment”. (Broin v Philip Morris Cos., supra, at 891.) These problems are, of course, very significant. (See, Castano v American Tobacco Co., supra.)
In R.J. Reynolds Tobacco Co. v Engle (672 So 2d 39 [Fla 1996]), the District Court of Appeal of Florida, Third District, *880 certified a class of Florida citizens and residents who had suffered or died from diseases caused by their addiction to cigarettes. The Appellate Division, First Department, in Small v Lorillard Tobacco Co. (supra, at 7), criticized this case on the ground that “[t]here was no analysis of why the common issues predominated over the individual issues.”
In Scott v American Tobacco Co. (725 So 2d 10 [La 1998]), the Court of Appeal of Louisiana, Fourth Circuit, certified a tobacco case brought on a claim of medical monitoring. The court said, “In the instant case we are concerned basically with one substance only, nicotine, and one effect only, addiction.” (Scott v American Tobacco Co., supra, at 13.) However, most jurisdictions are of the view that addiction is a highly individual issue (see, e.g., Barnes v American Tobacco Co., supra; Castano v American Tobacco Co., supra), and the Louisiana court’s impression that the tobacco case involved a mass tort arising from a common cause finds no support in other reported cases. A tobacco case does not involve a mass tort arising from a single accident or catastrophic event. Moreover, in the Louisiana medical monitoring case, a plaintiff would have to prove that as a proximate result of exposure to a substance he suffered a significantly increased risk of contracting a serious latent disease. This is a far less difficult and far less individualistic burden of proof than that faced by a plaintiff in the case at bar where proximate causation of his specific disease must be proven.
Turning back to the law of this jurisdiction, the court notes that the Appellate Division, Second Department, has stressed the commonality, predominance, and superiority criteria of CPLR 901 in its more recent class action decisions. (See, e.g., Karlin v TVF Am., 239 AD2d 562; Komonczi v Fields, 232 AD2d 374.) The second prerequisite of CPLR 901 concerns “questions of law or fact common to the class which predominate over any questions affecting only individual members”. (CPLR 901 [a] [2] [emphasis added].) In their complaint, the plaintiffs purport to identify some of the common issues in this case as follows:
a. whether cigarettes cause lung cancer;
b. whether cigarettes cause throat cancer;
c. whether and when the defendants knew or should have known that cigarettes cause lung cancer;
d. whether and when the defendants knew or should have known that cigarettes cause throat cancer;
e. whether the defendants knowingly and intentionally entered into a common scheme or plan to conceal information *881 and misrepresent information about cigarettes, particularly the addictive nature of nicotine and the cancer-causing properties of tar;
f. whether the tobacco companies have controlled and manipulated the levels of nicotine in their cigarettes;
g. whether the acts of the defendants constitute negligence, gross negligence, fraud, misrepresentation, breach of warranties and failure to warn;
h. whether the tobacco companies’ cigarettes are defectively designed;
i. whether the plaintiffs and those similarly situated are entitled to compensatory, punitive and exemplary damages.
Regarding issues a and b, numerous other courts have concluded that causation in a tobacco case does not present a common issue. (See, e.g., Small v Lorillard Tobacco Co., 252 AD2d 1, supra; Barnes v American Tobacco Co., 161 F3d 127, supra; Castano v American Tobacco Co., 84 F3d 734, supra; Emig v American Tobacco Co., 184 FRD 379, supra; Arch v American Tobacco Co., 175 FRD 226, supra.) Both Emig (supra) and Arch (supra) rely on Matter of Agent Orange Prod. Liab. Litig. MDL No. 381 (818 F2d 145, 165 [1987]), where the Court of Appeals, Second Circuit, stated that the “relevant question, therefore, is not whether Agent Orange has the capacity to cause harm, the generic causation issue, but whether it did cause harm and to whom. That determination is highly individualistic”.
The Appellate Division, Second Department, reached a similar conclusion years earlier in the Daikon Shield case, Rosenfeld v Robins Co. (63 AD2d 11 [1978]), when it denied class certification and found that causality had to be determined on a case-by-case basis.
Like the injuries alleged in Agent Orange (supra) and Rosenfeld (supra), lung cancer has many risk factors such as heredity, alcohol, occupational exposure, environmental exposure, diet, and smoking, and throat cancer has diverse risk factors such as periodontal disease, marihuana use, and tobacco use. As the depositions in this case show, each of these risk factors would have to be explored on a case-by-case basis. Plaintiff Gottlieb, for example, had periodontal disease and may have smoked marihuana. As the depositions also show, the victims of cancer did not all smoke the same brand or combination of brands, did not smoke the same quantities of cigarettes, and did not smoke for the same periods of time. Just the risk factor *882 arising from the use of tobacco alone will require exploration on an individual basis. In sum, the issue of causality is certainly not a common one.
Insofar as issues c, d, e, and f are concerned, the plaintiffs’ abrupt withdrawal of the fraud, negligent misrepresentation, and breach of express warranty causes of action from class action consideration undermines, in whole or in part, their contention about commonality. After the Appellate Division’s CPLR 3211 order and after the plaintiffs’ withdrawals, the only causes of action remaining for class consideration are the first (failure to warn prior to 1969), the fifth (negligent and defective design), the sixth (strict products liability), the eighth, in part (breach of implied warranty of merchantability), the ninth, in part (breach of implied warranty of fitness for a particular purpose), and the derivative claims. The plaintiffs did not show that scienter and deception remain in this case as allegedly significant common issues after the withdrawal of their central fraud claim. Moreover, a conspiracy must rest on an intentional tort (see, Cresser v American Tobacco Co., 174 Misc 2d 1; Portnoy v American Tobacco Co., 1997 WL 92040, 1997 NY Misc LEXIS 31 [Sup Ct, NY County, Feb. 19, 1997, Eerier, J.]; Lindsay v Lockwood, 163 Misc 2d 228), and the plaintiffs did not adequately show that a viable intentional tort remains in their case. At best for the plaintiffs, they have muddied the record concerning whether conspiracy remains in this case as a common issue, and, if it does not, then a further question arises concerning whether the nonmanufacturing defendants (the parent companies and trade organizations) may be held in.
Item g (negligence, etc.) is little more than a list of causes of action. The plaintiffs, who have the burden of proof on this motion, did not show here that there are particular issues pertaining to these causes of action which are common to the class. Item h (defective design) is not a common issue. There are numerous brands of cigarettes which differ in design and content. Item i, entitlement to compensatory and punitive damages, is not a common issue. (See, Karlin v IVF Am., 239 AD2d 562, supra; Komonczi v Fields, 232 AD2d 374, supra.)
The court notes that addiction is not a common issue (see, e.g., Small v Lorillard Tobacco Co., supra; Barnes v American Tobacco Co., supra), since individual inquiry would have to be made into, e.g., attempts to quit smoking and since credibility would have to be assessed for each plaintiff. The Diagnostic and Statistical Manual of Mental Disorders (4th ed 1994), published by the American Psychiatric Association, gives sev *883 eral “criteria for substance dependence,” all of which the defendants would have the right to examine on a case-by-case basis.
Even assuming that there are some common issues present in this case, the plaintiffs completely failed to show that they “predominate.” (See, CPLR 901 [a] [2]; Karlin v IVF Am., supra; Komonczi v Fields, supra.) “[T]he existence of a common issue does not by itself suffice to establish the predominance of issues common to the putative class necessary to justify a class action”. (Gordon v Ford Motor Co., 260 AD2d 164, 165 [1st Dept 1999].) In Gordon (supra), the existence of a common issue, whether 1988 and 1989 year model Lincoln Continentals were defectively designed, did not satisfy the predominance test where individual issues pertaining to about 60,000 members of the putative class would become the focus of the litigation.
“The fundamental issue under CPLR 901(a)(2) is whether the proposed class action asserts a common legal grievance, i.e., whether the common issues predominate over or outweigh subordinate issues that pertain to individual members of the class. When such predominance is established, it follows that the economies of time, effort and expense, envisioned by the class action format, may be achieved * * *
“The use of a predominance test was not meant to create any rigid criteria in determining whether a class action should proceed. It is rather a pragmatic, functional and ad hoc test to determine whether the proposed class members are more bound together by a mutual interest in the adjudication of common questions than they are divided by the individual members’ interest in matters peculiar to them.” (3 Weinstein-Korn-Miller, NY Civ Prac ]j 901.11.)
“ [P]redominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.” (Amchem Prods, v Windsor, 521 US 591, 623 [1997].) The United States Supreme Court applied the predominance test in Amchem (supra) and stated: “[G]iven the greater number of questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions, any overarching dispute about the health consequences of asbestos exposure cannot satisfy the Rule 23(b)(3) predominance standard.” (Amchem Prods, v Windsor, supra, at 624.) The presence of numerous individual issues may “overwhelm” the common issues (Georgine v Amchem Prods., 83 F3d 610, 630, affd sub nom. Amchem Prods, v *884 Windsor, supra) and undermine class cohesion. (See, Amchem Prods, v Windsor, supra.)
While in Friar v Vanguard Holding Corp. (78 AD2d 83, 97, supra), decided in 1980, the Appellate Division, Second Department, focused the predominance test on whether the use of a class action would result in economies of time, effort, and expense and achieve uniformity of decision as to persons similarly circumstanced, approximately two years later, in Kleinberg v Frankel (89 AD2d 556), the Appellate Division, Second Department, distinguished Friar v Vanguard Holding Corp. (supra) and stated upon its denial of class certification, “there is no issue common to the suggested class which, if resolved, would decide the most significant issue in all of the cases to be encompassed by the class”. (Kleinberg v Frankel, supra, at 557.) “The proceeding would inevitably ‘ “splinter into individual trials” ’ * * * and would not ‘ “ ‘achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated’ ” ’ ” (Kleinberg v Frankel, supra, at 557, quoting Strauss v Long Is. Sports, 60 AD2d 501, 507, and Friar v Vanguard Holding Corp., supra, at 97). The more recent decisions of the Appellate Division, Second Department, concerning class certification show that the court’s predominance test is directed toward the cohesiveness of the class, and those cases which presented significant, individual issues did not qualify for class action treatment. (See, e.g., Aprea v Hazeltine Corp., 247 AD2d 564; Karlin v IVF Am., 239 AD2d 562, supra; Komonczi v Fields, 232 AD2d 374, supra.)
In the case at bar, the number and significance of individual issues overwhelm those which are arguably common to the class. (See, e.g., Small v Lorillard Tobacco Co., 252 AD2d 1, supra; Barnes v American Tobacco Co., 161 F3d 127, supra; Castano v American Tobacco Co., 84 F3d 734, supra.) Near the very beginning of each lung plaintiff’s case, there may be a complex issue as to which type of lung cancer he suffers from, since, according to one of defendants’ medical experts, there are various types of the disease, not all of which have been consistently associated with smoking. The very significant issues of addiction and causation are individual in nature. (See, e.g., Barnes v American Tobacco Co., supra; Rosenfeld v Robins Co., 63 AD2d 11, supra.) The affirmative defenses raised by the defendants such as Statute of Limitations (see, Rosenfeld v Robins Co., supra) and assumption of risk (see, Arbegast v Board of Educ., 65 NY2d 161) must be adjudicated on a case-by-case basis. Comparative fault will also have to be weighed *885 for each individual plaintiff. (See, Rosenfeld v Robins Co., supra; Barnes v American Tobacco Co., supra.) Choice-of-law problems also require individual analysis where members of the putative class did not contract cancer in New York. (See, Schultz v Boy Scouts, 65 NY2d 189; Castaño v American Tobacco Co., supra.) Entitlement to compensatory and punitive damages will also have to be proven on an individual basis.
Particular causes of action asserted by the plaintiffs have their own individual issues. For example, under strict products liability, each plaintiff will have to prove that each type of cigarette he smoked contained a defect at the time he smoked. (See, Barnes v American Tobacco Co., supra.) A cause of action for breach of implied warranty of merchantability involves individual proof that the product was not fit for its ordinary purpose. (See, Gordon v Ford Motor Co., supra.) Although there are undoubtedly many more individual issues than those noted above, further inquiry would be pointless. Clearly, individual issues overwhelm any allegedly common issues that remain in this case.
Concerning predominance, the court also observes that the economies envisioned by the Friar decision (supra) may be largely illusory in this case. Issues tried in common in a class action may reappear later in the case as individual issues are tried. (See, Castano v American Tobacco Co., supra.) For example, assuming causation could be tried in a class manner, the same evidence would have to be considered in connection with comparative fault. No economy will be achieved if two juries have to hear much the same evidence, and, indeed, the Castaño court found a Seventh Amendment problem in having two different juries decide the same issue.
The predominance criterion (CPLR 901 [a] [2]) and the superiority criterion (CPLR 901 [a] [5]), to which the court now turns, obviously overlap since the greater the number of individual issues the less likely superiority can be established. The Castano court addressed the difficulty of making a superiority determination in a case involving an “immature tort.” “Our specific concern is that a mass tort cannot be properly certified without a prior track record of trials from which the district court can draw the information necessary to make the predominance and superiority analysis required by rule 23. This is because certification of an immature tort results in a higher than normal risk that the class action may not be superior to individual adjudication.” (Castano v American Tobacco Co., supra, at 747.) The Court of Appeals continued, “Take for *886 example the district court’s plan to divide core liability from other issues such as comparative negligence and reliance. The assumption is that after the class verdict, the common issues will not be a part of the follow-up trials. The court has no basis for that assumption. It may be that comparative negligence will be raised in the individual trials, and the evidence presented at the class trial will have to be repeated. The same may be true for reliance. The net result may be a waste, not a savings, in judicial resources. Only after the courts have more experience with this type of case can a court certify issues in a way that preserves judicial resources.” (Castano v American Tobacco Co., supra, at 749.)
The plaintiffs have not shown that an adequate number of tobacco cases have been tried with favorable results, and obviously the merits of this immature mass tort should first be adequately tested on an individual basis before the commencement of an enormous class action. Moreover, not only have there been relatively few trials, this court has not had any motions for summary judgment submitted to it whereby unmeritorious causes of action, if any, in the tobacco cases may be pruned. Cases from other jurisdictions show that pruning by way of summary judgment or directed verdict is possible. (See, e.g., Allgood v R.J. Reynolds Tobacco Co., 80 F3d 168; Roysdon v R.J. Reynolds Tobacco Co., 849 F2d 230; Marks v R.J. Reynolds Tobacco Co., 965 F Supp 857.) The plaintiffs in these tobacco cases typically bring a “shot-gun” type of complaint, and a squandering of judicial resources will occur if a class is certified before causes of action are adequately tested for merit through motion practice or before causes of action have been shown through practical experience useless to try.
In the absence of any realistic plan for managing the proposed class action, in the absence of any realistic showing that a large increase in judicial resources would become available to handle the thousands of individual, complex tort cases that a class action would splinter into, and, to repeat, in the absence of an adequate track record, this court cannot find that the superiority criterion has been satisfied.
Finally, the court is mindful of CPLR 906, “Actions conducted partially as class actions,” which provides in relevant part:
“When appropriate,
“1. an action may be brought or maintained as a class action with respect to particular issues”.
The purpose of CPLR 906 and of Federal Rules of Evidence, *887 rule 23 (a) (4), after which the State statute is modeled, is to allow the advantages and economies of trying issues common to the class on a representative basis to be realized even though individual issues would have to be separately litigated. (See, Emig v American Tobacco Co., 184 FRD 379, supra; 7B Wright-Miller-Kane, Federal Practice and Procedure: Civil 2d § 1790.) Partial certification is inappropriate when it does not materially advance the disposition of a case. (Emig v American Tobacco Co., supra [partial certification denied].) In the case at bar, certification of a class with respect to particular issues is not appropriate because few, if any, truly common issues remain in the case after the plaintiffs’ withdrawal of certain causes of action and because some issues alleged to be common would subsequently reappear at the individual trials. In deciding whether to certify questions on a class-wide basis, the problem of reappearing issues must be carefully considered so that the defendants’ Seventh Amendment right to have only one jury decide an issue is respected. (See, Castano v American Tobacco Co., 84 FRD 734, supra; Matter of Rhone-Poulenc Rorer , 51 F3d 1293 [7th Cir 1995].) The plaintiffs herein have given little or no consideration to that problem.
Rosenfeld v Robins Co. (63 AD2d 11, supra), the Dalkon Shield case decided by the Appellate Division, Second Department, is not in plaintiffs’ favor in regard to CPLE 906. The appellate court stated: “Nor do we find this to be a proper case for a partial class action certification pursuant to CPLE 906. While some factual issues could perhaps be resolved in a class action format, these issues are thoroughly intertwined with those which must be determined individually. Furthermore, in view of the limited scope of the issues which can be resolved on a class-wide basis, the judicial economy to be reaped and the advantages for litigants of a partial class action will be relatively small.” (Rosenfeld v Robins Co., supra, at 20.)
In comparison to Rosenfeld v Robins Co. (supra), the case at bar presents a far greater number of individual issues. The proposed class in the Daikon Shield case amounted to only an estimated 2,525 women, while the proposed class herein greatly exceeds 65,000 members. The plaintiffs herein have asserted multiple causes of action against multiple defendants. If the number of individual issues in Rosenfeld v Robins Co. (supra) deterred the appellate court from certifying the action partially or in full, the case at bar certainly does not invite class action treatment in any manner.
To sum up, this case fails to satisfy the predominance and superiority prerequisites of CPLE 901 (a) (2) and (5), respec *888 tively. The application for class certification was brought before an adequate track record for tobacco cases was made in this jurisdiction, and the application was made in a case where the precipitous withdrawal of certain causes of action increased class certification problems. At best for the plaintiffs in this type of tobacco case, the application for class certification was brought in the wrong action at the wrong time.
Accordingly, the cross motion is denied.