**Mona Elaine SATTERFIELD, Individually and as Mother and Natural Guardian of Joshua Heath Morris, a minor under the age of 18 years; Johnny William Satterfield; and William Wesley Morris**

v.

**J.M. HUBER CORPORATION.**

Civ. No. 2:93–cv–186–WCO.

United States District Court,
N.D. Georgia,
Gainesville Division.

August 23, 1994.

See also, 888 F.Supp. 1567.

Steven Montalto, Jill Annette Barker, Friedman & Montalto, Atlanta, GA, for plaintiffs.

C. Christopher Hagy, Brian B. Pastor, Sutherland, Asbill & Brennan, Atlanta, GA, for defendant.

## ORDER

O'KELLEY, Chief Judge.

Presently before the court is defendant's motion for judgment on the pleadings as to Counts I and II of plaintiffs' complaint [9–1].

### FACTUAL BACKGROUND

This case involves claims under the Clean Air Act, 42 U.S.C. § 7401–7642, and common law claims for trespass, nuisance and negligence per se at Huber's oriented strand board ("OSB") plant located in Jackson County outside Commerce, Georgia. Plaintiffs' Counts I and II allege violations of the Clean Air Act and nine violations of emissions levels as reported by the defendant to the Georgia Environmental Protection Division ("EPD"). Count I basically addresses the fact that Huber should have obtained a Prevention of Significant Deterioration permit before the plant was built. Count II alleges that Huber violated its 1988 permit and the "draft" permit, issued by EPD, by exceeding emissions levels. The plaintiffs own and reside on property which is located in the general area of Huber's plant.

Jackson County is an area that has achieved National Ambient Air Quality Standards as set by the United States Environmental Protection Agency ("EPA"). This means that the area is subject to the Clean Air Act's Prevention of Significant Deterioration ("PSD") program. Defendant is a major emitting facility/major stationary source since it has the potential to emit more than 250 tons per year of particulates and volatile organic compounds. Georgia EPD issued

Huber's Final Air Quality Permit for construction and operation on May 5, 1993.

The air permit application that Huber initially submitted to EPD for its review was based on projected emissions calculations. Defendant contends that both it and EPD expected that the plant would not exceed 250 tons per year for any pollutant and, therefore, the plant would not be subject to PSD review. Accordingly, EPD issued Huber a construction permit without requiring all of the pre-construction steps provided for in the PSD program. After the plant was constructed, tests conducted by Huber indicated that the new plant exceeded 250 tons per year in emissions of particulate matter ("PM") and volatile organic compounds ("VOC"). Thus in 1988, Huber's permit did not meet the requirements of the Clean Air Act. Huber and EPD then entered into a consent order pursuant to which Huber paid penalties, conducted additional emissions testing, underwent complete PSD review, and considered and installed additional emissions control technology at the plant.

Shortly before the EPD issued the final PSD permit, two individuals who own property adjoining Huber's plant site property, Lee and Janice Perdue, filed a Clean Air Act citizen suit against Huber in this court, *Lee R. Perdue and Jancie R. Perdue v. J.M. Huber Corp.*, No. 2:92–cv–235–WCO. Huber's final air permit was issued while that case was pending. The court entered a Consent Judgment in the Perdue action on July 23, 1993, and it was dismissed with prejudice on that date. Prior to the entry of the Consent Judgment, defendant gave notice to the Administrator of the Environmental Protection Agency and the U.S. Attorney General of the proposed consent order. Defendant alleges that this citizen suit is virtually identical to the Perdue action.

## LEGAL ANALYSIS
### Judgment on the Pleadings

A motion for judgment on the pleadings under Federal Rule 12(c) can be used to raise the defense of failure to state a claim for which relief can be granted (normally raised in a motion to dismiss). Fed.R.Civ.P. 12(h)(2). Therefore, this motion calls for the same standard as a motion to dismiss for failure to state a claim. *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551 (2d Cir. 1977).

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *See also Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1010 (11th Cir.1992). Defendant submits four grounds which it contends require the court to dismiss Counts I and II of the plaintiffs' claims: (1) the Clean Air Act does not authorize citizen lawsuits based on past violations; (2) the plaintiffs' claims are moot as Huber now has a PSD permit; (3) Count II should be dismissed because it is based solely on allegations of violations of a non-objective standard; and (4) the plaintiffs' Clean Air Act claims are barred by the doctrine of *res judicata*.[1]

### Citizen Lawsuits

■ Defendant contends that the Clean Air Act's citizen suit provision, 42 U.S.C. § 7604, does not confer subject matter jurisdiction where the claims are based solely on allegations of past violations. *Gwaltney v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64, 108 S.Ct. 376, 385, 98 L.Ed.2d 306 (1987). Section 7604 of the Clean Air Act states that in the absence of federal or state enforcement, private citizens may commence civil actions against any person "who is alleged *to have violated* (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter ..." 42 U.S.C. § 7604(a)(1) (emphasis added). *Gwaltney* in-

---

1. The defendant initially argued that Count I should be dismissed because Huber and EPD fully complied with all PSD pre-construction review requirements. However, in their Reply Brief the defendant withdrew this argument.

*See* J.M. Huber Corporation's Reply Brief in Support of its Motion for Judgment on the Pleadings as to Counts I and II of Plaintiffs' Complaint, p. 12.

volved a similar provision of the Clean Water Act and a citizen suit filed in response to a company's repeated violations of its NPDES permit by discharging pollutants from its meat-packing plant into a river. The last alleged violation of the NPDES permit in *Gwaltney,* occurred one month before the complaint was filed. The Supreme Court stated that for purposes of federal court jurisdiction, citizen plaintiffs must "allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney,* 484 U.S. at 57, 108 S.Ct. at 381. The Court then remanded the case to the lower court to determine whether the citizens groups' allegations of continuing violations were made in good faith.

Plaintiffs contend that *Gwaltney* was partially overruled by the 1990 Amendments to the Clean Air Act. Defendant maintains that *Gwaltney* was not partially overruled, but rather was incorporated by the 1990 amendments. The 1990 Amendments added that a person may commence a civil lawsuit against any person **"who is alleged to have violated (if there is evidence that the alleged violation has been repeated) ... an emission standard ..."** 42 U.S.C. § 7604 (language added by the 1990 Amendments is in bold).[2] Thus, Congress adopted *Gwaltney* to the extent that it allowed a plaintiff to sue for past violations *if there is evidence that the alleged violation has been repeated. See Atlantic States v. Whiting Roll–Up Door,* 772 F.Supp. 745, 753 (W.D.N.Y.1991).

Count I of plaintiff's complaint alleges wholly past violations of the Clean Air Act's PSD program. Specifically, plaintiffs allege the following in ¶ 30:

> Huber has violated the Clean Air Act in operating without a proper air quality permit and failing to obtain a proper preconstruction permit, in failing to utilize the best available control technology until or-

dered to do so by EPA, in failing to submit relevant emissions data thereby improperly obtaining a permit in 1988, in consistently and repeatedly violating the various conditions of its draft permits.

*See* 42 U.S.C. § 7604(a)(3) and 42 U.S.C. 7475(a)(1) and (4) (relating to the review required prior to the construction of a facility). All of the above allegations relate to actions occurring *before* EPD issued the final PSD permit in May 1993, and none of these alleged violations were occurring at the time the lawsuit was filed. The court must determine whether these violations are capable of repetition. The gravamen of Count I is that defendant failed to undergo the required review to receive a proper permit. A defendant can only fail to obtain a permit once. This alleged violation is incapable of repetition because the plant's construction was completed years before the present suit was brought. In addition, Huber did receive a permit in May 1993, so that any violations that could now occur would no longer fall within Count I. Plaintiffs have not provided any specific allegations that Huber has violated or is violating its current permit.

■ Similarly, Count II alleges only past violations which are incapable of repetition. In ¶¶ 32 and 33, plaintiffs allege Huber violated its 1988 permit, which incorporated a portion of Georgia's air regulations, and its draft permit. However, there is no mention of any allegations occurring after the final permit was issued in May 1993. Paragraph 34 does allege that Huber "consistently and repeatedly violated"[3] the Georgia regulatory nuisance standard, but there are no specific violations mentioned. The court cannot determine if the alleged violations were repeated ones, or if the plaintiffs are complaining about different violations which occurred over time. The law does not allow general vague allegations of repeated violations to satisfy the Clean Air Act and *Gwaltney* re-

---

**2.** Section 707(g) of Public Law 101–549 provided, in part, that the 1990 Amendments relevant to this case "shall take effect with respect to actions brought after the date 2 years after the enactment of the Clean Air Act Amendments of 1990 [Nov. 15, 1990]." Thus, the Amendments and the new language apply to this case.

**3.** Plaintiffs state in their Brief in Opposition to Defendant's Motion for Judgment on the Pleadings that they *have alleged repeated violations* and, thus, their complaint should not be dismissed. While plaintiffs have alleged numerous violations, none of them occurred at the time this lawsuit was filed or after the time this lawsuit was filed and none can be repeated.

quirements that citizen suits must be based on current violations or on the *same* repeated violation.

■ The court reads 42 U.S.C. § 7604(a) to mean that the alleged violation which must be repeated is the *same* violation occurring more than once. This interpretation of the statutory language is similar to *Gwaltney* which stated that a citizen plaintiff can allege an intermittent violation, defined as "a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney*, 484 U.S. at 57, 108 S.Ct. at 381. The court does not believe that one type of violation and then another different type of violation of the permit can be interpreted as fulfilling the statute. Other courts have found that the 60–day notice is intended to give time for the defendant to correct the violation. *Id.*, at 60, 108 S.Ct. at 382. Similarly, the requirement that the violation be repeated indicates that the courts will not allow citizens to file suits based on violations that have been corrected. The Clean Air Act citizen suit provision is not intended to be a windfall for plaintiffs. Rather it is intended to encourage and enforce compliance with environmental regulations.

In plaintiffs' notice letter to the EPD, they indicated that there were repeated violations of emission levels for formaldehyde, particulate matter, VOC, and carbon monoxide. The emissions levels which had been violated were contained in the 1988 permit and the 1991 draft permit. However, the defendant was issued a new final permit in May of 1993 by the State of Georgia. Plaintiffs have alleged no current or on-going violations of this permit. Therefore, the court finds that it does not have jurisdiction under 42 U.S.C. § 7604(a). As there are no specific violations that could reoccur and as there are no specific violations identified as ongoing at the time the suit was filed, the court GRANTS defendant's motion for judgment on the pleadings with regards to Counts I and II.

**Mootness**

■ The Supreme Court also addressed the mootness issue in *Gwaltney*. The principle of mootness is designed to prevent a suit when there is no reasonable expectation that the wrong will be repeated. *United States v.* *W.T. Grant, Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). However, the heavy burden of proving that the wrong cannot occur again is on the defendant. "Mootness doctrine thus protects defendants from the maintenance of suit under the Clean [Air] Act based solely on violations wholly unconnected to any present or future wrongdoing, while it also protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.'" *Gwaltney*, 484 U.S. at 66–67, 108 S.Ct. at 386 (citing *United States v. Oregon State Medical Society*, 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978 (1952)). The Eleventh Circuit has had the opportunity to address the mootness issue in *Atlantic States Legal Foundation v. Tyson Foods*, 897 F.2d 1128 (11th Cir.1990) (hereinafter *Tyson Foods*). The Circuit found that *Gwaltney* left open the question of whether "in a citizen suit, civil penalties may be assessed against the defendant when there clearly were ongoing violations and thus grounds for injunctive relief at the time suit was filed." *Tyson Foods*, 897 F.2d at 1134.

In *Tyson Foods*, the district court had found that the case was moot by focusing on whether there were ongoing violations at the time that it ruled on the motion for summary judgment. Then the district court held that once the injunctive portion of the case becomes moot, the civil penalties portion of the case must be dismissed as well. *See Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*, 682 F.Supp. 1186 (N.D.Ala.1988). A panel of Eleventh Circuit Judges disagreed with the district court's interpretation of *Gwaltney*. First, the Court held that "for purposes of assessing a plaintiff's allegations of ongoing violations, the court must always look to the date the complaint was filed." *Tyson Foods*, 897 F.2d at 1134. Second, the Court held that "the mooting of injunctive relief will not moot the request for civil penalties *as long as such penalties were rightfully sought at the time the suit was filed.*" *Id.* at 1135.

■ At the time the plaintiffs initially brought this suit, they requested an injunction and civil penalties based on past viola-

tions which cannot be repeated. The suit was filed on December 20, 1993. Plaintiffs admit that prior to the filing of their complaint, Huber had received and was operating under a final PSD permit. There are no allegations in the complaint of any violation committed by Huber after it installed new control devices and received its May 1993 permit.[4] The Eleventh Circuit has established the following standard with relation to mootness: "Plaintiffs must be able to prove that non-compliance was on-going at the time they filed suit in order to be able to later maintain an action for civil penalties." *Tyson Foods*, 897 F.2d at 1135. With the modification contained in the 1990 Amendments to the Clean Air Act, the Eleventh Circuit's standard must include not only on-going violations, but also past violations capable of being repeated. As plaintiffs' allegations of specific violations relate to events that occurred at least a year before plaintiffs filed this suit and events that cannot be repeated, plaintiffs' claims are moot under the test established by this Circuit.[5] *See also Chesapeake Bay Foundation v. Gwaltney of Smithfield*, 890 F.2d 690, 696 (4th Cir.1989).

### Violations of a Non–Objective Standard

Defendant also alleges that Count II should be dismissed because it is based on allegations of violations of a non-objective standard. Count II seeks to hold Huber liable under the Clean Air Act for alleged violations of a "standard" incorporated into its 1988 permit and the 1991 draft permit from Georgia's Air Quality regulations. The provision from the Georgia regulations restates the Georgia common law of nuisance as follows:

1) no person owning, leasing or controlling the operation of any air contaminant sources shall willfully, negligently or through failure to provide necessary equip-

ment or facilities or to take necessary precautions, cause, permit, or allow the emission from said air contamination source or sources of such quantities of air contaminants as will cause, or tend to cause, by themselves or in conjunction with other air contaminants a condition of air pollution in quantities or characteristics or of a duration which is injurious or which unreasonably interferes with the enjoyment of life or use of property in such area of the State as is affected thereby. Complying with any of the other sections of these rules and regulations or any subdivisions thereof, shall in no way exempt a person from this provision.

Ga.Comp.R. & Regs. R. 391–3–1–.02(2)(a)(1) (1992). This "standard" contained in defendant's earlier permits is a subjective one. Count IV of plaintiffs' complaint alleges common law nuisance and is not addressed by defendant's motion.

Citizens cannot sue for alleged violations of a non-objective standard such as the one cited above, even where such a standard is incorporated into a permit. *See Northwest Envtl. Advocates v. City of Portland*, 11 F.3d 900 (9th Cir.1993); *Atlantic States Legal Foundation, Inc. v. Eastman Kodak Co.*, 12 F.3d 353 (2nd Cir.1993) (holding that there was no provision in the CWA authorizing a citizen suit where plaintiffs failed to allege violations of specific effluent limitations or standards contained in defendant's permit). The Clean Air Act sets overall National Ambient Air Quality Standards which individual states use in setting quantifiable emissions limitations put into effect through State Implementation Plans (SIPs). *See* 42 U.S.C. §§ 7407, 7409. These emission limitations are designed to achieve general air quality standards and are objective, numerical stan-

---

4. Plaintiffs assert in their Brief in Opposition to Defendant's Motion for Judgment on the Pleadings as to Counts I and II of Plaintiffs' Complaint that "Defendant has violated the Final Permit issued in May 1993 as shown in testing completed and reported in September 1993." *Id.* at p. 12. This statement was not contained in plaintiffs' complaint and was not contained in the 60 day notice letter sent by plaintiffs to the EPA and the State of Georgia.

5. The last specific emission test result listed in the 60-day notice letter to EPA was conducted on Huber's Board Press Vent # 1, # 2, and # 3 on January 27–28, 1993. The reported emissions exceeded the computed allowable emissions for formaldehyde and phenol. Letter from Steven Montalto, Plaintiffs' Attorney, to J.M. Huber Corp., Joe Tanner, Commissioner, Georgia Dept. of Natural Resources, et. al., 5 (Sept. 21, 1993).

dards of the type susceptible to citizen suit enforcement.

A common law nuisance "standard," of the type plaintiffs rely on is purely subjective. It would not comport with the intent of Congress to allow a citizen suit to proceed based on alleged violations of a vague, non-objective standard where the permit holder is in compliance with the specific emission limitations of its permit which were set to meet national ambient air quality standards. *See Wilder v. Thomas,* 854 F.2d 605, 613–614 (2nd Cir. 1988); *United States v. Solar Turbines, Inc.,* 732 F.Supp. 535, 539 (M.D.Pa.1989). Thus, the court finds that plaintiffs' Count II should be dismissed as it contains allegations of violations of a subjective standard. Plaintiffs must allege objective standards under the citizen suit provision of the Clean Air Act. *See* 42 U.S.C. § 7604(a) (allowing suits for violations of emission standards or limitations or violations of permit conditions).

### CONCLUSION

Thus, as discussed above the defendant's motion for judgment on the pleadings as to Counts I and II can be GRANTED on either one of two grounds. First, the Clean Air Act does not authorize suits for wholly past violations which are not capable of being repeated. Second, as there were no on-going violations or no violations capable of being repeated at the time the plaintiffs filed this suit, the court can also dismiss the first two counts on the grounds of mootness. Finally, the court can dismiss Count II as it does not contain alleged violations of an objective nature. The court does not find it necessary to review defendant's *res judicata* argument. The court hereby GRANTS defendant's motion [9–1].

IT IS SO ORDERED.