Ronald PATTON, Plaintiff,

v.

**GENERAL SIGNAL CORPORATION and Robert F. Hyland & Sons, Inc., Defendants.**

No. 96–CV–6450L.

United States District Court, W.D. New York.

Nov. 7, 1997.

Alan J. Knauf, Knauf, Craig & Doran, P.C., Rochester, NY, for Plaintiff.

Thomas E. Reidy, Nixon, Hargrave, Devans & Doyle LLP, Rochester, NY, for defendant General Signal Corp.

Henry R. Ippolito, Chamberlain & Greenfield, Rochester, NY, for Defendant Robert F. Hyland & Sons, Inc.

*DECISION AND ORDER*

LARIMER, Chief Judge.

Plaintiff, Ronald Patton, commenced this action pursuant to the citizen suit provisions of § 304 of the Clean Air Act ("the Act"), 42 U.S.C. § 7604. Plaintiff alleges that during 1993, at which time he was employed by

defendant General Signal Corporation ("General Signal") at its Lightnin Facility ("the Facility") at 135 Mt. Read Boulevard in Rochester, New York, General Signal hired defendant Robert F. Hyland & Sons, Inc. ("Hyland") to perform renovations at the Facility. Plaintiff alleges that as part of the renovations, Hyland removed substantial amounts of regulated asbestos-containing material ("RACM") from the Facility. Plaintiff further alleges that defendants violated § 112 of the Act, 42 U.S.C. § 7412, and the National Emission Standards for Hazardous Air Pollutants for Asbestos, 40 C.F.R. Part 61, Subpart M ("the asbestos NESHAP"). As a result of these violations, plaintiff alleges that he was exposed to asbestos, putting him at risk of lung disease. Plaintiff's first cause of action is based upon the Act, and his second cause of action asserts a negligence claim under New York law. Plaintiff seeks civil penalties pursuant to 42 U.S.C. § 7413(b), costs of future medical monitoring for himself, and costs and attorney's fees.

Defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. General Signal also moves under Rule 56(e) to strike portions of plaintiff's affidavit sworn to on May 9, 1997. Plaintiff has filed a cross-motion for summary judgment on the issue of defendants' liability on plaintiff's first cause of action. Plaintiff has also filed a motion to strike portions of the affidavits of Mark Ocwieja and Todd Young, which General Signal submitted in support of its motion for summary judgment. In the alternative, plaintiff moves pursuant to Rule 56(f) for a continuance of the summary judgment motions pending a period of discovery.

## FACTUAL BACKGROUND

Plaintiff alleges that he worked at General Signal from January 1991 until he went on disability leave on account of a back injury on October 19, 1993. In 1993, General Signal decided to reorganize certain of its operations at the Facility, which necessitated a renovation. General Signal hired Hyland as the general contractor for the renovation. Plaintiff, who was certified as an asbestos handler in March 1993, was assigned to help oversee the renovation.

Plaintiff alleges that during the renovation, defendants removed large amounts of RACM at various sites in the Facility. He claims that defendants violated the Act and the asbestos NESHAP by: failing to notify the Environmental Protection Agency ("EPA") of demolition or renovation activity; failing to follow prescribed procedures for asbestos emission control; and failing to properly dispose of waste RACM. He alleges that "asbestos was being thrown around like sacks of flour," and that "numerous employees (including [plaintiff]) were showered with asbestos, and inhaled large quantities ..." of the material. Patton Aff., May 9, 1997, ¶¶ 23, 24.

One part of the project of particular significance in this case involved the renovation in October 1993 of an employee locker room (referred to by the parties as "the men's locker room" or "locker room number 1"). It is undisputed that there were asbestos-related problems with this project, but the parties disagree about the nature, cause, and extent of the problems. Plaintiff alleges that between October 7 and 14, RACM was removed from the locker room without notification being given to the EPA and without proper handling procedures. EPA notification, and the use of proper procedures, is mandated by EPA regulations when the amount of RACM involved is at least 260 linear feet on pipes or 160 square feet on other components, or 35 cubic feet where the length or area could not be measured previously. 40 C.F.R. § 61.145(a)(1). Plaintiff asserts that the amount of RACM removed from the locker room far exceeded the threshold amount.

Defendants paint an entirely different picture. According to defendants, one of Hyland's subcontractors, Monroe Piping & Sheet Metal Inc. ("Monroe"), moved a single hot water tank in the locker room that was covered with asbestos-containing insulation. General Signal contends that Monroe "accidentally disturbed the insulation ..." General Signal's Statement of Undisputed Material Facts ("Rule 56 Statement") ¶ 7. Hyland states that Monroe disconnected the tank and then asked Hyland to move it. Accord-

ing to Hyland, a Hyland employee, believing (like everyone else in the area at that time) that the insulation was fiberglass, moved the tank about fifteen to twenty feet with a forklift. It then occurred to someone that the insulation might contain asbestos. The plant engineer, Mark Ocwieja, was notified, and he in turn contacted Marcor Environmental, Inc. ("Marcor"), a licensed asbestos abatement contractor. Marcor inspected the site on October 14, and began work the same day. According to General Signal, Marcor completed the cleanup on October 19, 1993.

General Signal alleges that Marcor removed approximately 62.8 square feet of insulation from the water tank, and about 23 linear feet of insulation from water pipes. General Signal states that Marcor also removed about 25 linear feet of pipe insulation that had previously been put in an asbestos waste storage bin at the Facility. If that is true, the removal of those amounts would not trigger the EPA regulations concerning notice and procedures. 40 C.F.R. § 61.145(a)(4).

Plaintiff disputes defendants' assertions and alleges that even prior to Marcor's arrival on the scene, asbestos was illegally removed from the locker room without proper procedures or notification to EPA. Plaintiff contends that the 35–cubic–feet standard should apply because the length or area could not have been measured previously. He alleges that a waste shipment manifest prepared by Marcor records that some 6.5 cubic yards, or 175.5 cubic feet, of RACM was removed by Marcor. He also claims that even if the linear threshold applies, it was exceeded because, by plaintiff's calculation, the pipes involved must have had about 690 linear feet of insulation.

Plaintiff further alleges that the locker room project was "just a small piece" of the entire asbestos removal program. Patton Aff., May 9, 1997, ¶ 26. He alleges that large quantities of RACM were removed in other projects without the required notice to the EPA.

Plaintiff also alleges that throughout 1993, defendants "repeatedly and illegally disposed of asbestos by mixing it in with concrete and other debris in dumpster, [sic] and passed off to landfill operators as construction and demolition debris." Patton Aff., May 9, 1997, ¶ 51. He states that New York State Department of Environmental Conservation records show that Hyland disposed of over sixty tons of debris at a landfill in 1993, and that this debris "[u]ndoubtedly ... included large quantities of RACM." Patton Aff., May 9, 1997, ¶ 53.

## DISCUSSION

After reviewing the record, I find that summary judgment for any party would be inappropriate at this stage. The pleadings raise several issues of material fact that cannot be resolved at this stage of the case, especially since the parties have had virtually no opportunity for discovery.

## I. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment against both defendants on plaintiff's first cause of action under the Act. Plaintiff bases this motion on two documents. One is Marcor's waste shipment manifest dated November 5, 1993, which states that 6.5 cubic yards of friable asbestos were shipped from the Facility. Patton Aff. (Item 15) Ex. N. The other document is a settlement agreement between General Signal and the Occupational Safety and Health Administration ("OSHA") concerning certain asbestos-related violations by General Signal. *Id.* Ex. G.

Neither of these documents can support summary judgment for plaintiff at this stage. The Marcor manifest was not prepared by General Signal or Hyland, and there is no evidence that either defendant ever adopted the statements contained in it. It may constitute some evidence of the amount of asbestos that Marcor removed, but it certainly is not conclusive proof of anything at this stage.

The OSHA settlement agreement also does not support summary judgment. The agreement states that General Signal "agrees to correct the violations" it had been charged with by OSHA. Contrary to plaintiff's statement in paragraph 36 of his May 9, 1997 affidavit, however, OSHA did not find that "there were ... '6 bags of asbestos ...

improperly stored in locker no. 1,' consisting of 'approximately 50 linear feet of asbestos.' " The only asbestos-related violations that appear in the record in connection with this settlement agreement involve a lack of initial monitoring on a total of twenty-four linear feet of asbestos-containing insulation. Patton Aff. (Item 15) Ex. G. The reference to six bags and fifty linear feet of asbestos appear in an undated Notice of Alleged Safety or Health Hazards issued to General Signal by OSHA. Plaintiff has submitted no evidence that OSHA ever concluded, or that General Signal ever admitted to, these alleged violations. Moreover, fifty linear feet is below the regulatory threshold of 260 linear feet, and there is no indication of how much asbestos was contained in the bags.

## II. Defendants' Motions for Summary Judgment on the Clean Air Act Claim and Plaintiff's Motion for a Continuance

Defendants have moved for summary judgment on plaintiff's first cause of action. They contend that plaintiff's allegations are not based on his personal knowledge and do not make out a prima facie case under the Act. In response, plaintiff has requested a continuance of defendants' motions pursuant to Rule 56(f) on the ground that plaintiff needs to complete discovery on various matters.

■ By its terms, Rule 56 permits a defendant to move for summary judgment "at any time." Fed.R.Civ.P. 56(b). As the Supreme Court has explained, however, the rule contemplates that summary judgment will be granted only "after adequate time for discovery ..." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). What time will be adequate may vary, of course, and where it is clear that the plaintiff cannot prevail on any of his claims, summary judgment may be granted notwithstanding the absence of discovery.

■ Nevertheless, pre-discovery summary judgment remains the exception rather than the rule, and will be "granted only in the clearest of cases." *Kleinman v. Vincent,* No. 90 CIV. 5665, 1991 WL 2804 *1 (S.D.N.Y.

Jan.8, 1991). *See Radich v. Goode,* 886 F.2d 1391, 1393 (3d Cir.1989) ("The court must give a party opposing summary judgment an adequate opportunity to obtain discovery"); *Alabama Farm Bureau Mut. Cas. Co. v. American Fidelity Life Ins. Co.,* 606 F.2d 602, 609 (5th Cir.1979) ("Summary judgment should not ... ordinarily be granted before discovery has been completed"), *cert. denied,* 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed.2d 22 (1980); *Park Ave. Bank, N.A. v. Bankasi,* No. 93 CIV. 1483, 1995 WL 739514 *1 (S.D.N.Y. Dec. 13, 1995) ("Summary judgment is strongly disfavored prior to the parties having had an adequate opportunity for discovery"), *aff'd,* 101 F.3d 1393 (2d Cir. 1996).

■ The Second Circuit has also "frequently emphasized the critical importance of discovery in the summary judgment context." *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 10 (2d Cir.1983). Therefore, "summary judgment should not be granted while the party opposing judgment timely seeks discovery of potentially favorable information," as long as the request is "neither quixotic nor superfluous." *Id.*

■ One factor that courts have considered in determining whether to grant a plaintiff's request for discovery when the defendant has moved for summary judgment is how long the case has been pending and whether the plaintiff has delayed making the request for discovery. *See, e.g., Paul Kadair, Inc. v. Sony Corp. of America,* 694 F.2d 1017, 1031 (5th Cir.1983). Therefore, "[u]nless dilatory or lacking in merit, the motion should be liberally treated." *Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1522 (10th Cir.1992) (quoting James W. Moore & Jeremy C. Wicker, Moore's Federal Practice ¶ 56.24 (1988)). *See also Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc.,* 18 F.3d 260, 264 (4th Cir.) (although plaintiffs tort claims were not yet established, "they [we]re alleged in the complaint, and the plaintiff should have [been given] the opportunity to develop support for its claims through discovery"), *cert. denied,* 513 U.S. 931, 115 S.Ct. 323, 130 L.Ed.2d 283 (1994); *WSB–TV v. Lee,* 842 F.2d 1266, 1269 (11th

Cir.1988) (where plaintiffs in six-month-old civil rights case had been afforded no opportunity for discovery, district court's consideration of defendant's motion for summary judgment was erroneous).

The case at bar was commenced on October 7, 1996, and the summons and complaint were served on both defendants on February 4, 1997. By stipulation of the parties, the time to answer was extended to April 1, 1997, on which date General Signal filed its motion for summary judgment. Hyland filed its motion on May 9, 1997. After plaintiff filed an amended complaint on May 12, 1997, General Signal filed an amended motion for summary judgment on June 13. Plaintiff cross-moved for summary judgment on that same date, and filed his Rule 56(f) motion on July 25.

In view of its procedural history, this case is still in its very early stage, and there has been virtually no opportunity for either side to engage in any meaningful discovery. On this record, I do not believe that plaintiff has been dilatory in seeking discovery. Furthermore, I believe that there are issues of sufficient importance that there should be further development of those issues through discovery.

For example, plaintiff alleges that he and other employees "were showered with asbestos" due to General Signal's failure to comply with government-mandated procedures. Patton Aff. ¶ 24. Since plaintiff was a certified asbestos handler at the time, this allegation cannot simply be ignored. Presumably, plaintiff was familiar with asbestos. Plaintiff also alleges that on October 12, 1993, he heard Ocwieja say with regard to asbestos regulations, "We might be breaking a few laws, but we must get the project done on time." *Id.* ¶ 59.

Plaintiff has also submitted evidence that there was an extensive system of pipes at the facility, *id.* Ex. C, and he alleges that most of them were covered with asbestos that was removed during the renovation. *Id.* ¶ 10. He alleges that there were many separate projects undertaken at the facility in 1993 involving the removal of RACM. Plaintiff has submitted a copy of a price estimate from Marcor with $450 listed for disposal costs in connection with the October 14, 1993 cleanup, and showing a rate of $75 per cubic yard for asbestos waste removal. *Id.* Ex. K. Marcor's bill stated that seven cubic yards of material were disposed of. *Id.* Ex. M. The bill also indicated that Marcor used 130 disposal bags during the project. A waste shipment manifest prepared by Marcor stated that Marcor hauled 92 bags containing 6.5 cubic yards of "[f]riable asbestos" from the facility. *Id.* Ex. N. Sean Miller, who was Marcor's project manager at the time, states in an affidavit that four or five bags could hold about twenty-five linear feet of insulation, which indicates that one bag could hold about five or six linear feet. Miller Aff. ¶ 11.

Although defendants contend that much of the material involved in the renovation was not RACM, this is nevertheless some evidence that a quantity of RACM in excess of the regulatory threshold was removed from the facility. The same is true of plaintiff's allegations and evidence about the large quantities of RACM that defendants allegedly illegally disposed in 1993 by mixing it with debris and depositing it in landfills. General Signal contends that there is no evidence that this material came from the facility or that it contained RACM, but given plaintiff's other allegations of illegal asbestos-related procedures, I am not prepared to say at this early stage of the case that plaintiff will be unable to substantiate his allegations after engaging in discovery.

Plaintiff has also submitted a copy of the March 1994 settlement agreement between OSHA and General Signal. Patton Aff. (Item 15) Ex. G. The agreement states that General Signal "agrees to correct the violations" it had been charged with by OSHA. Three of those violations involved a lack of initial monitoring on a total of twenty-four linear feet of asbestos-containing insulation. In addition, plaintiff has submitted a copy of an OSHA complaint alleging various asbestos-related violations, including asbestos debris being scattered on the floor, and improper storage of asbestos. I recognize that the amounts of asbestos referred to in the settlement agreement are less that the regulatory threshold, and that the OSHA complaint contains only allegations. These documents nonetheless provide some indication that

plaintiff should be permitted a period of discovery here.

■ I also find that at this stage, plaintiff has adequately alleged repeated violations. Under the citizen suit provision of the Act, 42 U.S.C. § 7604, any person may commence an action against any person "who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of(A) an emission standard or limitation under this Act or (B) an order issued by the [EPA] Administrator or a State with respect to such a standard or limitation." Thus, a plaintiff may sue based on past violations as long as the violations were repeated. *Adair v. Troy State Univ. of Montgomery,* 892 F.Supp. 1401, 1409 (M.D.Ala.1995).

There is authority that to be considered "repeated," the violations must be the same type of violation. *Satterfield v. J.M. Huber Corp.,* 888 F.Supp. 1561, 1565 (N.D.Ga.1994). In *Satterfield,* the court held that the defendant's alleged failure to undergo the required review to receive a proper air emissions permit could not be combined with other different alleged violations so as to constitute a "repeated" violation. The court reasoned since that a "defendant can only fail to obtain a permit once," this alleged violation was incapable of repetition. *Id.* at 1564.

■ In the case at bar, the alleged violations consist mainly of removing and disposing of RACM in amounts in excess of the regulatory threshold without notifying the EPA or following proper handling procedures. Despite Hyland's insistence that the only incident involved here is the one involving the hot water tank, plaintiff has expressly alleged that there were many separate violations of a similar nature throughout 1993. Obviously, a defendant cannot remove or dispose of the same asbestos more than once, but as long as the violations are of the same type, § 7604's requirement that the violation have been repeated is satisfied. *Id.* at 1565. *See Glazer v. American Ecology Envtl. Services Corp.,* 894 F.Supp. 1029, 1039 (E.D.Tex. 1995) (complaint clearly alleged repeated violations, and therefore satisfied § 7604's requirements).

■ Defendants also contend that plaintiff's discovery request is deficient because plaintiff has not complied with Rule 56(f)'s requirement that the affidavit of the party opposing a motion for summary judgment on the ground that he needs discovery "include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir.1994).

■ Strictly speaking, plaintiff has not fully complied with every one of these requirements. For instance, although he has identified several persons whom he would like to depose and the type of information that he seeks to obtain from them, he has not always stated what efforts he has made to obtain those facts thus far. However, "in general, these [Rule 56(f)] requirements have been imposed only when the court is skeptical about a genuine issue ever emerging or when the party opposing summary judgment has been less than diligent in employing discovery. If he has been diligent, the courts usually do not insist upon strict satisfaction of the requirements and allow a party to survive summary judgment without a full explanation as to why he cannot present opposing material." 10A Charles A. Wright et al., Federal Practice and Procedure § 2741 (2d ed.1983) (footnotes omitted). Moreover, "the requirement that a party state what steps he has taken to obtain access to the relevant evidence implies that there has been time and an opportunity to engage in discovery." *Id.*

■ When a court decides that summary judgment cannot be granted because there has been insufficient discovery, the court has two options: it may defer consideration of the motion until after period of discovery, or it may simply deny the motion without prejudice. 11 James W. Moore, Moore's Federal Practice ¶ 56.10[1] (1997). I believe that the latter course is preferable here. I will therefore deny all the motions for summary judgment without prejudice. After a period of discovery, the parties may renew their mo-

tions if they wish. If any party does renew a motion for summary judgment, the papers already filed on the existing motions may simply be incorporated by reference, and the parties need file only whatever additional materials that they deem necessary and relevant.

### III. Hyland's Motion for Summary Judgment on Plaintiff's Second Cause of Action

Hyland has moved for summary judgment on plaintiff's second cause of action for negligence under New York law. Plaintiff seeks judgment only against Hyland for the costs of future medical monitoring of plaintiff so that any asbestos-related illnesses that develop can be detected in their early stages. Hyland maintains that such damages are not available under New York law unless plaintiff can now show a clinically demonstrable presence of asbestos in his body, or some physical manifestation of prior asbestos contamination.

Having reviewed New York case law on the subject, I do not agree with Hyland's contention that plaintiff must establish that asbestos is demonstrably present in his body. Although plaintiff's burden of proof is heavy, at this early juncture I am not prepared to dismiss this claim.

In *Askey v. Occidental Chem. Corp.*, 102 A.D.2d 130, 477 N.Y.S.2d 242 (4th Dep't 1984), the Fourth Department held that "there is a basis in law to sustain a claim for medical monitoring as an element of consequential damage ..." *Id.* at 135, 477 N.Y.S.2d 242. In reaching that conclusion, the court relied upon *Schmidt v. Merchants Despatch Transp. Co.*, 270 N.Y. 287, 200 N.E. 824 (1936), in which the Court of Appeals held that a plaintiff has a cause of action immediately upon exposure to a foreign substance and can recover all damages which he can show resulted or "would result therefrom," even though at the time the action is commenced no serious damage to the plaintiff has developed. *Schmidt*, 270 N.Y. at 301, 200 N.E. 824. Under this rule, the defendant is liable for "reasonably anticipated" consequential damages which may arise subsequent to the initial invasion although the invasion itself is "an injury too slight to be noticed at the time it is inflicted." *Id.*

Based upon these principles, the court in *Askey* held that "to recover for apprehended consequences not presently manifest there must be such a degree of probability of their occurrence as to amount to a reasonable certainty that they will result." 102 A.D.2d at 136, 477 N.Y.S.2d 242 (citations omitted). Observing that "[t]he proof problems are, of course, formidable," the court stated that "[i]f a plaintiff seeks future medical expenses as an element of consequential damage, he must establish with a degree of reasonable medical certainty through expert testimony that such expenses will be incurred." *Id.* at 137, 477 N.Y.S.2d 242 (citation omitted). Although the court made it clear that it is not easy to prevail on a claim for medical monitoring in the absence of a present injury, the court did not make the clinically demonstrable presence of a toxic substance in the plaintiff's body a *sine qua non* of such a claim.

In support of its motion, Hyland relies upon *Abusio v. Consolidated Edison Co. of New York*, 238 A.D.2d 454, 656 N.Y.S.2d 371 (2d Dep't 1997), in which the Second Department held that the trial court properly set aside a jury verdict awarding damages for emotional distress and/or future medical monitoring costs related to the plaintiffs' exposure to polychlorinated biphenyls ("PCBs"), a toxic substance. The court held that "[u]nder the prevailing case law, in order to maintain a cause of action for fear of developing cancer or for future medical monitoring costs following exposure to a toxic substance ..., a plaintiff must establish both that he or she was in fact exposed to the disease-causing agent and that there is a 'rational basis' for his or her fear of contracting the disease." 238 A.D.2d at ——, 656 N.Y.S.2d at 372 (citations omitted). The court said that "[t]his 'rational basis' has been construed to mean the clinically demonstrable presence of PCBs in the plaintiff's body, or some indication of PCB-induced disease i.e., some physical manifestation of PCB contamination." *Id.* (citations omitted). The court held that although the plaintiffs had presented sufficient evidence to establish ex-

posure, they failed to present any clinical evidence of PCB contamination, and they therefore had not shown a rational basis for their fear of developing any PCB-caused disease.

*Abusio* is not controlling, however. First of all, it should be noted that *Abusio* was decided after a full jury trial. Despite the court's reference to "clinically demonstrable presence" of contaminants, then, it is evident that the court simply believed that mere exposure to a toxic substance, without more, was insufficient to sustain a verdict in the plaintiffs' favor. Such a holding would not be inconsistent with *Askey*'s "reasonable medical certainty" standard.

In addition, to the extent that *Abusio* can be read as requiring proof that contaminants are present in the plaintiff's body, I am not convinced that such a holding represents the prevailing law on the subject. For one thing, the cases cited by the Second Department in support of that statement did not involve claims for medical monitoring costs at all, but claims seeking damages for emotional distress arising from *fear* of contracting a disease in the future as a result of the plaintiffs' exposure to a toxic substance. The burden of proof should be higher for such an emotional distress claim than for a medical monitoring claim. Exposure to a toxic substance might in some instances be enough to make medical monitoring advisable, but not enough to provide a rational basis for a fear that is severe enough to cause the plaintiff compensable emotional distress. Moreover, there could be cases in which the plaintiff cannot prove that a certain substance is present in his body, but could nevertheless present expert medical testimony that the plaintiff's exposure to that substance warrants future medical monitoring.

■ I therefore agree with Judge John Curtin's assessment, in a similar case in this district, that *"Askey* accurately represents a growing national acceptance of ... a claim [for medical monitoring], and would be embraced by the New York Court of Appeals". *Gibbs v. E.I. DuPont De Nemours & Co.*, 876 F.Supp. 475, 478–79 (W.D.N.Y.1995). *See also Metro–North Commuter R.R. Co. v. Buckley*, —— U.S. ——, —————, 117 S.Ct. 2113, 2122–24, 138 L.Ed.2d 560 (1997) (noting state-law cases authorizing recovery for medical monitoring in the absence of physical injury, albeit with some limitations on the remedy); *Jones v. Utilities Painting Corp.*, 198 A.D.2d 268, 603 N.Y.S.2d 546 (2d Dep't 1993) (assuming that a cause of action to recover damages for future medical monitoring costs is viable, plaintiff must "specifically allege actual exposure to asbestos, at toxic levels").

As the court stated in *Askey*, plaintiff's burden of proof will be heavy, and if he is unable to establish the presence of asbestos in his body, he may be unable to show to a reasonable degree of medical certainty that he needs medical monitoring. In this case, there has been no discovery and, therefore, there is no medical evidence at all on this issue.

Furthermore, the parties also dispute the extent to which plaintiff was exposed to asbestos in the first place. If plaintiff's allegation that he was "showered" with asbestos is true, it may be unnecessary for him to prove that there is asbestos in his body, provided that he adduces sufficient medical evidence that such a high level of exposure to asbestos makes medical monitoring reasonably necessary. Since plaintiff's allegations are sufficient to meet the standard set forth in *Askey*, dismissal of his claim for medical monitoring costs would therefore be premature at this stage.

### IV. Motions to Strike

General Signal has moved to strike portions of plaintiffs May 9, 1997 affidavit, and plaintiff has moved to strike portions of the affidavits of Mark Ocwieja and Todd Young, which General Signal submitted in support of its summary judgment motion. These motions, however, are relevant only insofar as they relate to whether the challenged portions of these affidavits should be considered in determining the summary judgment motions. Even leaving aside these statements, though, I believe that summary judgment would be premature in this case, so the motions to strike are effectively moot at this

point, and, therefore, the motions are dismissed.

## CONCLUSION

Defendant General Signal Corporation's motion for summary judgment (Item 5) is denied as moot. Its motion for summary judgment and to strike portions of plaintiff's affidavit (Item 21) is denied without prejudice.

Defendant Robert F. Hyland & Sons, Inc.'s motion for summary judgment (Item 13) is denied without prejudice.

Plaintiff's cross motions for summary judgment on the issue of liability on his first cause of action (Items 15 and 20), are denied without prejudice. Plaintiff's motion to strike portions of the affidavits of Mark Ocwieja and Todd Young, and in the alternative for a continuance of defendants' motions for summary judgment (Item 29) is denied.

Defendant, General Signal Corporation, is directed to answer within the time established by the Federal Rules of Civil Procedure.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), all pre-trial matters in this case are referred to United States Magistrate Judge Jonathan W. Feldman, including but not limited to (1) conduct of a scheduling conference and entry of a scheduling order pursuant to Rule 16 Fed. R. Civ. P, (2) hearing and disposition of all non-dispositive motions or applications, (3) supervision of discovery, and (4) supervision of all procedural matters involving the aforementioned or involving the preparation of the case or any matter therein for consideration by the District Judge.

The Magistrate Judge / / shall /√/ shall not also hear and report upon dispositive motions, for the consideration of the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B)–(C).

IT IS SO ORDERED.