**SIERRA CLUB, Physicians for Social Responsibility, Georgia Forestwatch, and Eileen Lange, Plaintiffs**

v.

**GEORGIA POWER COMPANY, Defendant.**

No. CIV.A. 3:02–CV–151–J.

United States District Court,
N.D. Georgia,
Newnan Division.

June 10, 2004.

Christopher A. Sproul, San Francisco, CA, Robert Guild, Columbia, SC, Robert Ukeiley, Berea, KY, for Plaintiffs.

Amanda Colleen Baxter, Daniel S. Reinhardt, Margaret Claiborne Campbell, Atlanta, GA, Hugh Brown McNatt, Vidalia, GA, for Defendant.

Cletus W. Bergen, II, Savannah, GA, George Graham Holden, Charles A. Perry, Atlanta, GA, for Amicus.

### ORDER

CAMP, District Judge.

Pending before the Court are Defendant's Motion for Partial Summary Judgment [# 27–1] as to Count IV of Plaintiffs' Complaint, Plaintiffs' Cross Motion for Partial Summary Judgment on Count IV [# 47–1], and Defendant's Motion to Strike Plaintiffs' Statement of Undisputed Facts in Support of Plaintiffs' Cross Motion for Partial Summary Judgment on Count IV [# 55–1]. The Court **GRANTS** Defendant's motion for partial summary judgment on Count IV [# 27–1], **DENIES** Plaintiffs' cross motion for partial summary judgment on Count IV [# 47–1], and **DENIES** Defendant's motion to strike Plaintiffs' statement of undisputed facts [# 55–1].

Plaintiffs bring this suit as a citizen's suit authorized by the Clean Air Act ("CAA"). See 42 U.S.C. § 7604. Plaintiffs challenge Defendant Georgia Power Company's ("Georgia Power") emissions of hazardous air pollutants from its Wansley Steam–Electric Generating Plant in Heard County, Georgia, on numerous grounds. In Count IV, Plaintiffs specifically challenge Plant Wansley's Title V Permit issued under Georgia's State Implementation Plan pursuant to the CAA. Georgia Power wishes to construct new power generation units at Plant Wansley, which will increase Nitrous Oxide ("NOx") emissions; therefore, the Title V Permit requires Georgia Power to obtain "offsets," or reductions in similar emissions elsewhere. This Order addresses whether the required offsets comply with the CAA.

## I. Background

### A. The CAA and Georgia's State Implementation Plan

The CAA, 42 U.S.C. §§ 7401–7671q, requires all states to adopt "State Implementation Plans" ("SIPs") for attaining and maintaining National Ambient Air Quality Standards ("NAAQS"). NAAQS are based on maximum allowable levels of certain air pollutants, including ground-level ozone, which is formed by a chemical reaction between nitrogen oxides ("NOx") and volatile organic compounds. Once a State's SIP is approved by the U.S. Environmental Protection Agency (the "EPA"), it is enforceable by the State, the EPA, or by citizens through the CAA's citizen suit provision. 42 U.S.C. § 7604.

Plaintiffs bring a citizen suit alleging that Georgia Power's Wansley Plant, one of the largest power plants in the country, emits excessive amounts of toxic pollutants into the air. Plaintiffs allege that these

emissions contribute to the high levels of ground-level ozone present in the Atlanta metropolitan area. Plaintiffs contend that Plant Wansley's excessive emissions damage human health, wildlife, vegetation, visibility, and property throughout the state. It is undisputed that Plant Wansley's emissions, because of the Plant's location, contribute to the Atlanta metropolitan area's designation as a "non-attainment area" as a result of ground-level ozone pollution.

Georgia's EPA-approved SIP includes specific measures to reduce the amount of ground-level ozone in the non-attainment area. The Atlanta metropolitan area has exceeded NAAQS for ground-level ozone for 22 years. Georgia's SIP requires that the owner or operator of any new or modified major stationary source of $NOx$ emissions obtain emission "offsets" prior to operation of the new or modified source. Ga. Comp. R. & Regs. R. 391–3–1–.03(8)(c)1. "Offsets" are reductions in $NOx$ emissions from other existing major stationary sources of $NOx$ emissions in the non-attainment area. These $NOx$ emission offsets must be **real, permanent, quantifiable, enforceable,** and **surplus.** *Id.* R. 391–3–1–.03(8)(c)12(iii), 391–3–1–.03(13)(b)(1).

In 1990, Congress amended the CAA to provide, in Title V, a comprehensive operating permit scheme for stationary sources of air pollution. *The Federal Title V Air Quality Permit Program for Operating a Major Source of Air Pollution,* 33 Envtl. L. Rep. (Envtl.L.Inst.) at 10815 (Oct.2003). The goal was to impose strict requirements on stationary sources in serious non-attainment areas such as the Atlanta metropolitan area. The new, comprehensive permitting scheme intended to include all the clean air requirements applicable to a covered source in one document. The amended regulations create a vehicle for easier enforcement of clean air laws by providing a single document usable by state and federal governments and the public to monitor compliance. Title V also provides for operational flexibility to achieve progress in the most cost-effective way. This final goal has resulted in complex requirements for emission offsets to encourage both cost savings and progress towards reducing emissions.

Operating and construction permits issued by Georgia's Environmental Protection Division ("EPD") under Title V consolidate all regulations applicable to major stationary sources of air pollution, including SIP requirements. *See* 42 U.S.C. §§ 7661–7661f. Title V permits require permittees to routinely submit compliance reports, which become public record and are used in governmental monitoring. Furthermore, permit conditions are enforceable by citizen suits. 42 U.S.C. § 7604(a)(3). In this case, Plaintiffs challenge Georgia Power's amended Wansley Permit. The present motions involve Condition 3.4.7. of that Permit.

## B. Undisputed Facts

Most historic facts necessary to decide the present motions are not disputed. EPD amended the Title V permit for Georgia Power's Wansley Plant in July 2000 to allow construction and operation of a "combined cycle facility," which consists of four natural-gas combustion turbines. (Def.'s Stmt. of Mat. Facts ("SMF") ¶ 4.) [1] Because the new turbines emit $NOx$, Georgia Power's amended Wansley Permit requires Georgia Power to obtain $NOx$ emission offsets, at a ratio of 1.1 to 1, from its other emission sources. *Id.* ¶ 5. Specifically, condition 3.4.7 of the Wansley Permit provides:

---

1. Georgia Power's statements of material facts, or portions thereof, to which Plaintiffs have not objected are subsequently cited in this Order as "SMF."

The Permittee shall obtain 572.4 tons of NOx offsetting emissions reductions by the date that Phase I [i.e., two of the four new combustion turbines] commences operation. The NOx offsetting emissions reductions must be **real, permanent, quantifiable, enforceable, surplus,** and have occurred after December 31, 1996 and by the date that Phase I commences operation. For purposes of this condition, "commences operation" shall mean the date when the emissions unit on which construction occurred becomes operational and begins to emit NOx emissions.

*Id.* ¶ 5 (emphasis added); Huling Aff. ¶ 8 & Ex. A (citing Ga. Comp. R. & Regs. R. 391–3–1–.03(8)(c)). On June 25, 2002, EPD amended condition 3.4.7 of the Wansley Permit to require only 457.9 tons of NOx emission offsets. SMF ¶ 28. Two of the four new combustion turbines at the Wansley Plant (Phase I) began operating on or before July 9, 2002. (Compl. ¶ 102; Answer ¶ 102.)

To obtain the offsets required by condition 3.4.7, Georgia Power obtained amendments to its Bowen Plant Permit (the "Bowen Permit") and to seven of its electric generating plants in the non-attainment area (the "7–Plant Permits"). SMF ¶¶ 19, 25, 34. The Bowen Permit amendment limited NOx emissions from Unit One and Unit Two of the Bowen Plant's four steam generating units ("units") for the 2002 ozone season. *Id.* ¶ 25. The 7–Plant Permit amendments limited NOx emissions from seven Georgia Power plants for the 2003 ozone season and beyond. Plant Bowen is one of the seven plants. *Id.* ¶ 38; Huley Aff. Ex. L. The ozone season runs from May 1 through September 30 each year. SMF ¶ 24.

During the 2002 ozone season, Georgia Power reduced NOx emissions from units one and two at its Bowen Plant by 5,896.2 tons. *Id.* ¶¶ 29–30; Huley Aff. Exs. B, I.

Georgia Power primarily achieved these NOx emissions by utilizing selective catalytic reduction ("SCR") air pollution controls on units one and two at the Bowen Plant. (Huling Aff. ¶ 19 & Exs. E, J.) Georgia Power is currently complying with the new emission limitations imposed in the 7–Plant Permits for the 2003 ozone season and beyond. SMF ¶ 42.

Plaintiffs allege in Count IV of their Complaint that Georgia Power violated condition 3.4.7 of its Wansley Permit by not obtaining 459.7 tons of NOx offsets that are real, permanent, quantifiable, enforceable, and surplus. (Compl.¶¶ 149–54.) Georgia Power moves for summary judgment on Count IV, contending that: (1) Count IV is an impermissible collateral attack on the EPD's permitting decisions; and (2) even if Count IV is proper under the CAA's citizen-suit provision, the Bowen Permit created proper offsets for the 2002 ozone season. (Def.'s Br. in Supp. of its Mot. for Part. Summ. J. at 11, 16.)

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant,' ... and draw 'all justifiable inferences ... in his favor ....'" *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991) (en banc). The court may not weigh conflicting evidence nor make credibility determinations. *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 919 (11th

Cir.1993), *reh'g denied,* 16 F.3d 1233 (1994) (en banc).

As a general rule, "[the] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

For issues upon which the moving party bears the burden of proof at trial, the moving party must affirmatively demonstrate the absence of a genuine issue of material fact as to each element of its claim or defense on that legal issue. As the moving party with the burden of proof on the Wansley Permit, Georgia Power must support its motion with credible evidence that would entitle it to a judgment as a matter of law if not controverted at trial. If Georgia Power makes such a showing, it is entitled to summary judgment unless Plaintiffs come forward with significant, probative evidence demonstrating the existence of an issue of fact. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (quoting *Four Parcels,* 941 F.2d at 1437–38).

## III. Analysis

### A. Count IV's Allegations are Actionable Under the CAA's Citizen–Suit Provision

█ The first issue is whether Count IV of Plaintiff's Complaint is a proper challenge under the CAA's citizen-suit provision or whether it is merely a collateral attack on EPD's permitting decisions related to the Bowen and 7–Plant Permits. Generally, litigants are not allowed to interfere with the State's permitting scheme, used to enforce federal environmental laws, by challenging permitting decisions in court. *See, e.g., Palumbo v. Waste Techs. Indus.,* 989 F.2d 156, 159–60 (4th Cir.1993). Such challenges prevent the State's administrative processes from running their course and frustrate the legislative purposes underlying the CAA's permitting provisions. *See United States v. Solar Turbines, Inc.,* 732 F.Supp. 535, 540 (M.D.Pa.1989) (rejecting EPA's contention that it could challenge, in court, source's actions that complied with its CAA permit because allowing such a challenge "would not only be contrary to the general enforcement scheme in the [CAA], but would also lay waste to a source's ability to rely on a permit it has been issued by an authorized state permitting agency"); Part I.A., *supra.* Challenges to a permit must be made in the administrative process resulting in the permit. Georgia Power argues that Plaintiff Sierra Club did challenge the Bowen and 7–Plant Permits as not providing proper offsets and should not be allowed to raise the same issue in a citizen suit.

█ Plaintiffs, on the other hand, argue that they are challenging the Wansley Permit as a violation of the CAA. Private citizens can enforce violations of the CAA. Under 42 U.S.C. § 7604(a)(1), "any person may commence a civil action on his own behalf ... against any person ... who is alleged to have violated ... or to be in violation of ... an emission standard or limitation under this chapter." An "emission standard or limitation" is defined as, *inter alia,*

any other standard, limitation, or schedule established under any permit issued pursuant to subchapter [i.e., Title] V of this chapter or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations.

*Id.* § 7604(f)(4). Thus, violations of Title V permit conditions are actionable under the plain terms of the CAA's citizen-suit provision. *See Save Our Health Org. v. Recomp of Minn., Inc.,* 37 F.3d 1334, 1335–36 (8th Cir.1994); *Communities For A Better Environment v. Cenco Refining Co.,* 180 F.Supp.2d 1062, 1082 (C.D.Cal. 2001) ("[S]ubsection (f)(4) of the citizen suit provision does indeed provide for suit based on violations of Title V permits."); *Satterfield v. J.M. Huber Corp.,* 888 F.Supp. 1561, 1564 (N.D.Ga.1994) (O'Kelley, J.).

 Count IV of Plaintiffs' complaint expressly alleges that Georgia Power is violating condition 3.4.7 of Plant Wansley's Title V Permit and Georgia's SIP by not providing valid offsets. (Compl.¶¶ 150–54.) Because valid offsets depend upon amendments to the Bowen and 7–Plant Permits to reduce NOx emissions at other plants, Georgia Power argues that "[w]hile styled as an alleged permit violation, Count IV effectively attacks the permit conditions of the Bowen and 7–Plant Offset Permits." (Def.'s Brf. at 11.) The Court disagrees.

The issue is whether Plaintiffs' challenge is to the Wansley Permit or to the amended Bowen and 7–Plant Permits. The issue is not whether EPD's motive in amending the Bowen and 7–Plant Permits was to create "emissions limitations" for those plants or to create "offsets" for the Wansley Plant. The issue in Count IV is whether the amendment to the Wansley Permit violated the CAA even though its validity depended on amendments to Georgia Power's other plants' permits because of the emission offset requirements. *See* Huling Aff. ¶ 8 ("Georgia Power had to offset the planned emissions from the Combined Cycle Facility by reducing NOx emissions

elsewhere."). If Plaintiffs prevail and the Court declares the Wansley Permit invalid, the Court's ruling will not affect the Bowen and 7–Plant Permits.[2]

Furthermore, the amended Bowen and 7–Plant Permits did not state, and EPD did not determine, that Georgia Power had obtained real, quantifiable, enforceable, permanent, and surplus offsets for Plant Wansley. The Bowen and 7–Plant Permits do not purport to determine whether Georgia Power has complied with Condition 3.4.7 of Plant Wansley's permit and the associated SIP requirements, which is what Plaintiffs challenge in Count IV. *See Diamond Roofing Co., Inc. v. Occupational Safety and Health Review Comm'n,* 528 F.2d 645, 649–50 (5th Cir.1976) (holding that regulations, like the permits here, must clearly state an intended effect to be enforceable). Thus, Plaintiffs citizen suit under the CAA is not an attack upon the Bowen and 7–Plant Permits. *See United States v. S. Ind. Gas and Elec. Co.,* No. IP99–1692–CMF, 2002 WL 1760699, at *3–4 (S.D.Ind. July 26, 2002) (rejecting defendant's contention that EPA could not bring suit alleging a violation of defendant's CAA's permit and applicable SIP provisions merely because the state had issued the permit and made an applicability determination).

Plaintiffs' challenge under Count IV is distinguishable from the plaintiffs' challenges under the Resource Conservation and Recovery Act ("RCRA") in *Palumbo.* There, the plaintiffs challenged governmental actions inherent in the permitting process. *Palumbo,* 989 F.2d at 160 (concluding that "[a]ll of [plaintiffs' claims] allege what are essentially technical violations in the EPA permitting process").

---

**2.** Plaintiffs do not allege that Georgia Power has violated any conditions of the Bowen or 7–Plant Permits. Indeed, Plaintiffs admit that Georgia Power's NOx emissions reduction at

its Bowen Plant during the 2002 ozone season exceeded the amended Bowen Permit's requirements. SMF ¶¶ 29–30.

Here, Plaintiffs do not challenge EPD's permitting process, but allege that Georgia Power is not complying with the substantive requirements of the Wansley Permit and Georgia's SIP regarding emission offsets. In contrast, the plaintiffs in *Palumbo* did "not allege ... that the [plant] is currently in noncompliance" with its permit. *Id.* Rather than asserting violations of specific permit provisions as Plaintiffs have done here, the plaintiffs in *Palumbo* alleged only violations of the RCRA that "pertain to the EPA permitting process itself." *Id.* at 161 n. *.

Count IV of Plaintiffs' Complaint is not a collateral attack on EPD's permitting decisions regarding the Bowen and 7–Plant Permits, but is an actionable allegation that Georgia Power violated condition 3.4.7 of the Wansley Permit and Georgia's SIP. *See* 42 U.S.C. § 7604(a)(1), (f)(4).

**B. There is no Genuine Issue of Material Fact Regarding Whether Georgia Power Obtained Offsets that are Real, Permanent, Quantifiable, Enforceable, and Surplus**

Georgia's SIP provides that "[i]n order to be used as an offset under this subsection, emission reductions must satisfy the criteria in section (13), subsections (a) and (b)." Ga. Comp. R. & Regs. R. 391–3–1–.03(8)(c)12(iii). Subsection (13)(b) of the Rule provides that "a reduction in emissions must be real, permanent, quantifiable, enforceable, and surplus." *Id.* R. 391–3–1–.03(13)(b).[3] Subsection (13)(i) defines the terms "real," "enforceable," "permanent," "quantifiable," and "surplus." *Id.* R. 391–3–1–.03(13)(i).

Although Plaintiffs allege in Count IV of their Complaint that Georgia Power's purported offsets for the Wansley Plant's combined cycle facility are not quantifiable, they did not address this requirement in their opposition to Georgia Power's summary judgment motion. Thus, Plaintiffs have abandoned any claim that the offsets are not quantifiable. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 598–99 (11th Cir.1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citing *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir.1994)). *See also Brasseler, U.S.A.I., L.P. v. Stryker Sales Corp.,* 182 F.3d 888, 892 (Fed.Cir.1999) (noting that *Resolution Trust* and *Road Sprinkler* "stand for the unremarkable proposition that assertions made in the pleadings ... but not made in opposition to a motion for summary judgment, need not be considered by the district court ... in ruling on the motion for summary judgment").

**i. The Offsets are Real and Enforceable**

■ An offset is "real" if there is "a reduction in actual emissions emitted into the air." Ga. Comp. R. & Regs. R. 391–3–1–.03(13)(i)6. EPD amended the Bowen Permit to reduce the allowable NOx emissions for units one and two for the 2002 ozone season, and the amended permit also reduced the two units' actual NOx emissions below prior years' emissions.[4] It is undisputed that Georgia Power reduced 2002 NOx emissions from units one and two at the Bowen Plant below the new limit. (SMF ¶¶ 29–30; Huling Aff. Ex. I) (noting reduction of 5,323.8 tons during the

---

3. Condition 3.4.7 of the Wansley Permit tracks the language of this Rule. (Ukeiley Aff. Ex. H; Huling Aff. Ex. A.)

4. EPD calculated and used the average NOx emissions from units one and two at the Bowen Plant during the 1999 and 2000 ozone seasons as the baseline to measure the 2002 emission reductions. (SMF ¶ 26.)

2002 ozone season). Condition 3.4.7 of the Wansley Plant Permit required an offset of only 457.9 tons of NOx emissions for the 2002 ozone season. (SMF ¶ 28; Ukeiley Aff. Ex. H.)

Plaintiffs argue that the offsets were not real because of the potential for "emissions leakage" from units one and two to units three and four at the Bowen Plant. "Emissions leakage" occurs when emissions from one or more units at a plant are reduced, but emissions from other units at the same plant are increased, thereby resulting in no net reduction in overall plant emissions. Plaintiffs contend that Georgia Power could simply shift production—and, thus, NOx emissions—from units one and two to units three and four to obtain the emissions reductions required by the amended Bowen Permit.

Plaintiffs' speculation and emphasis of the "potential" for emissions leakage at the Bowen Plant does not create a genuine issue of fact as to whether the Bowen Plant actually reduced NOx emissions during the 2002 ozone season. Indeed, the undisputed evidence shows that Georgia Power significantly reduced the Bowen Plant's 2002 ozone season NOx emissions below prior years' emissions. EPD's Program Manager for its Stationary Source Permitting Program provided an undated internal evaluation to Plaintiffs' counsel that stated "[i]n the 2002 ozone season, Georgia Power emitted 13,385 tons at all 4 Units combined at Plant Bowen, a decrease from the baseline of 6,915 tons." (Huling Aff. Ex. N.) Plaintiffs have presented no evidence to create an issue of fact regarding this finding. Their speculation, unsupported by any evidence in the record, as to what could have happened at the Bowen Plant cannot overcome the undisputed evidence showing "a reduction in actual emissions emitted into the air" during the 2002 ozone season. *See* Ga. Comp. R. & Regs. R. 391–3–1–.03(13)(i)6.

Alternatively, EPD observed that "[i]t is not possible to decrease utilization at one unit and increase utilization at another unit because all the units are already operating near full capacity and therefore it is not possible for any of them to operate significantly more than they already do." (Huling Aff. Ex. N.) Thus, not only did Georgia Power reduce actual NOx emissions from units one and two at the Bowen Plant during the 2002 ozone season, the uncontroverted evidence suggests that it could not have emitted more NOx from units three and four, via emissions leakage or otherwise, because the entire plant was operating near full capacity. Plaintiffs have presented no evidence contradicting this and may not merely rest on their pleadings to create a genuine issue of fact in this regard.

An offset is "enforceable" if it is "enforceable by the [EPD]." *Id.* R. 391–3–1–.03(13)(i)2. Methods for ensuring that offsets are enforceable "include ... conditions in air quality construction or operating permits issued by the [EPD]." *Id.* It is undisputed that EPD amended the Bowen and 7–Plant Permits, specifically the conditions requiring NOx emission reductions from certain operating units at each plant. (SMF ¶¶ 19, 38.) These NOx emission limitations, which serve as the offsets for the Wansley Plant's new emissions, are fully enforceable by EPD. *See* O.C.G.A. §§ 12–9–6(b), 12–9–7(e); Ga. Comp. R. & Regs. R. 391–3–1–.09. Indeed, Plaintiffs have presented no evidence suggesting the offsets are not enforceable by EPD. Thus, there is no genuine issue of material fact as to whether Georgia Power's offsets are real and enforceable.

#### ii. The Offsets are Permanent

An offset is "permanent" if it is "assured for the life of the corresponding Emission Reduction Credit through an enforceable

mechanism such as a permit condition." Ga. Comp. R. & Regs. R. 391–3–1–.03(13)(i)4. As discussed in Part III.B, *supra*, the Rules provide that the criteria and definitions for emission reduction credits apply to emission offsets. *See id.* R. 391–3–1–.03(8)(c)12(iii). Thus, the definitions in Section (13) of the Rules apply to emission offsets. EPD's Manager of the NOx Permitting Unit described in a May 17, 2001 letter to Georgia Power the interplay of the Rules as follows:

> Condition[ ] 3.4.7 ... of [Plant Wansley's] Title V Permit ... state[s] that the offsets must be real, permanent, quantifiable, enforceable, surplus.... The Emission Reduction Credit (ERC) Rule, found in 391–3–1–.03(13), contains definitions for these terms. It is EPD's policy that any offsets required under Georgia Rule 391–3–1–.03(8)(c) must meet the same criteria as an ERC banked under 391–3–1–.03(13). EPD is currently going through the rulemaking process to include this policy directly in Rule 391–3–1–.03(8)(c).

(Ukeiley Aff. Ex. C at 1.) Indeed, even Plaintiffs cite the ERC Rule for the proposition that "[t]hese offsets must be real, permanent, quantifiable, enforceable and surplus." (Pls.' Br. in Opp'n at 3.)

Plaintiffs further contend that, even if the ERC Rule's definition of "permanent" applies, Georgia Power's offsets are not "assured for the life" of condition 3.4.7 of the Wansley Permit, which is infinite in duration. Because Georgia Power had obtained offsets for only the 2002 ozone season when Phase I of the Wansley Plant's combined cycle facility commenced operations, Plaintiffs argue that Georgia Power had not obtained permanent offsets as required by condition 3.4.7.

Georgia's SIP does not use the common dictionary definition of "permanent" for purposes of regulating ERCs and emission offsets. Thus, contrary to Plaintiffs' interpretation, the SIP did not require Georgia Power to obtain by July 9, 2002 emission offsets for 2002 and every year thereafter. Rather, the SIP required Georgia Power to obtain offsets that "are assured for the life of the corresponding ... [c]redit," which in this case is the Bowen Plant's emission reductions for the 2002 ozone season. *See* Ukeiley Aff. Ex. J ("The reduction in NOx emissions imposed by [the Bowen Plant] permit amendment are permanent for 2002 and that is the sole purpose of this permitting action. This permitting action is not for 2003 and beyond.")

It is undisputed that EPD amended the Bowen Permit to limit NOx emissions from that plant during the 2002 ozone season by an additional 572.4 tons, the amount initially required as an offset under condition 3.4.7 of the amended Wansley Permit. (SMF ¶¶ 19, 25–26; Huling Aff. Ex. E.) The additional emission limitations contained in the amended Bowen Permit were the only "corresponding ... [c]redit" EPD gave Georgia Power before July 9, 2002 for the Wansley Plant's new NOx emissions. The "life" of this corresponding credit was the 2002 ozone season, and the amended Bowen Permit "assured" these emission reductions for this time period. Therefore, there is no genuine issue of fact as to whether the offsets obtained via the Bowen Plant's emission reductions for the 2002 ozone season are permanent under Rule 391–3–1–.03(13)(i)4.

### iii. The Offsets are Surplus

An offset is "surplus" if it is "not required by any local, state, or federal law, regulation, order, or requirement" and is "in excess of reductions used by the [EPD] in issuing any other permit or to demonstrate attainment of [NAAQS] or reasonable further progress towards achieving attainment of [NAAQS]." Ga. Comp. R. &

Regs. R. 391–3–1–.03(13)(i)7. Essentially, the Rule prohibits owners or operators of major stationary sources of air emissions from "double-counting" emission reductions to satisfy multiple legal requirements.

Plaintiffs argue that Georgia Power is double-counting the purported offsets for the combined cycle facility because Georgia Power's emission reductions at the Bowen Plant are independently required by: (1) the CAA's New Source Review ("NSR") and New Source Performance Standard ("NSPS") programs as evidenced by the EPA's pending suit against Georgia Power for alleged violations of the NSR and NSPS; (2) Title IV of the CAA, i.e., the acid rain program; and (3) the EPA's NOx SIP Call. Plaintiffs' argument is based on faulty assumptions, however.

First, EPA's allegations that Georgia Power's NOx emissions at its Bowen and Scherer Plants exceed the limits allowed by the NSR and NSPS programs are just that—allegations in another lawsuit. *See United States v. Ala. Power Co.*, No. 1:99–CV–2859–JEC (N.D.Ga.) (Carnes, J.).[5] That EPA has filed suit against Georgia Power for these alleged emission violations does not establish that the emission reductions required by the amended Bowen and 7–Plant Permits were already required under other laws. Furthermore, it is uncertain whether Georgia Power will be required to reduce NOx emissions if EPA prevails in its suit. The allegations in the EPA's independent suit are not evidence in this case, and, thus, do not create a genuine issue of fact as to whether Georgia Power's offsets were surplus.

Second, the undisputed evidence does not support Plaintiffs' contention that

Georgia Power credited the emission reductions imposed by the amended Bowen and 7–Plant Permits towards Title IV's acid rain program requirements. Plaintiffs contend that Georgia Power's responses to three of Plaintiffs' requests for admissions and Charles Huling's[6] response to a question during his deposition indicate that Georgia Power double-counted their emission reductions. The Court disagrees. In its responses to Plaintiffs' requests for admissions, Georgia Power admits only that it is subject to a Title IV multistate NOx averaging plan, but denies that the plan imposed a NOx emission limit on the Bowen Plant in 2002. (Ukeiley Aff. Ex. G at 6–8.) Even assuming the plan limited NOx emissions at the Bowen Plant in 2002, Plaintiffs present no evidence that Georgia Power would not have met those limits had it not reduced emissions to generate offsets for the Wansley Plant. Indeed, the undisputed evidence indicates that Georgia Power would have met its Title IV requirements at the Bowen Plant in 2002 even if it had not reduced that plant's emissions to obtain offsets for the Wansley Plant. Huling testified that "We would have complied with Title IV regardless of whether we had those SCRs on [at the Bowen Plant]. We operated the SCRs to create offsets. . . . The reductions that occur due to the SCRs . . . are above and beyond Title IV." (Huling Dep. at 115–16, 194.) Plaintiffs present no evidence refuting Huling's testimony.

Finally, EPA's NOx SIP Call, which established statewide NOx emission budgets for twenty-two states, was not finalized until April 24, 2004 and does not take effect until June 21, 2004. *See* 69 Fed. Reg. 21642. The NOx SIP Call sets new

---

**5.** On June 27, 2001, Judge Carnes administratively closed EPA's suit against Georgia Power pending resolution of related matters by a multi-district litigation panel. (Ukeiley Aff.

Ex. B.) The case remained closed as of May 31, 2004.

**6.** Huling is Georgia Power's Environmental Manager for Air Programs. (Huling Aff. ¶ 1.)

NOx emission limits, in tons per state, from all emission sources in various states. *Id.* at 21643. The NOx SIP Call essentially requires Georgia to revise its SIP to obtain additional NOx emission reductions by 2007, but does not directly impose requirements on any particular source, e.g., any of Georgia Power's plants at issue in this case. In any event, the portion of the NOx SIP Call applicable to Georgia was not a "law, regulation, order, or requirement" at the time Georgia Power commenced operation of Phase I of the Wansley Plant's combined cycle facility. *See Michigan v. U.S. EPA,* 213 F.3d 663, 681–85 (D.C.Cir.2000) (vacating and remanding that portion of EPA's final rule pertaining to Georgia).

To summarize, it is undisputed that on July 9, 2002, the date by which Phase I of the Wansley Plant's combined cycle facility had begun emitting NOx, neither EPA's pending lawsuit nor EPA's NOx SIP Call were "law[s], regulation[s], order[s], or requirement[s]" applicable to Georgia Power, and it is undisputed that the Bowen Plant's 2002 NOx emission reductions used as offsets for the Wansley Plant exceeded the reductions required by Title IV of the CAA. Furthermore, there is no evidence in the record suggesting that EPD used the emission reductions imposed in the Bowen and 7–Plant Permits in issuing any permit other than the amended Wansley Permit or for the purpose of attaining NAAQS. Therefore, there is no genuine issue of fact as to whether Georgia Power's offsets are surplus under the plain meaning of Georgia's SIP and in accordance with condition 3.4.7 of the Wansley Plant Permit. *See* Ga. Comp. R. & Regs. R. 391–3–1–.03(13)(i)7; Ukeiley Aff. Ex. H.

## IV. Conclusion

For the foregoing reasons, Georgia Power's motion for partial summary judgment [# 27–1] is **GRANTED** as to Count IV of Plaintiffs' Complaint. Plaintiffs' cross motion for partial summary judgment as to Count IV [# 47–1] and Georgia Power's motion to strike Plaintiffs' statement of undisputed facts [# 55–1] are **DENIED**.